HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* ESTATE OF ENRIGHT ET AL.

No. 436.   Argued March 4, 1941.—Decided March 31, 1941.

---

[6] See, e. g., H. Rep. No. 328, 69th Cong., 1st Sess., p. 4.

*Mr. Gordon Tweedy,* with whom *Solicitor General Biddle, Assistant Attorney General Clark,* and *Messrs. Sewall Key* and *Morton K. Rothschild* were on the brief, for petitioner.

*Mr. James D. Carpenter, Jr.,* for respondents.

*Mr. Harold S. Deming* filed a brief on behalf of the Estate of Charles S. Haight, as *amicus curiae,* urging affirmance.

MR. JUSTICE REED delivered the opinion of the Court.

Certiorari was granted to review the judgment below [1] because of a conflict between it and *Pfaff* v. *Commissioner* [2] in the Second Circuit. The issue is whether § 42 of the Revenue Act of 1934 [3] permits the inclusion, as accruable items, in a decedent's gross income for the period ending with his death, of his share of the profits earned, but not yet received, of a partnership, when both the decedent and the partnership reported income on a cash receipts and disbursements basis.

Respondents are the executors of John M. Enright, an attorney and member of a law partnership in New Jersey. Both Mr. Enright and his firm kept their accounts and made their income tax report on a calendar year cash receipts and disbursements basis. He died, testate, No-

---

[1] 112 F. 2d 919.

[2] 113 F. 2d 114. See *Pfaff* v. *Commissioner, post,* p. 646.

[3] 48 Stat. 680, c. 277: "SEC. 42. Period in which Items of Gross Income Included. The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period."

vember 19, 1934. The partnership agreement provided for the termination of the partnership on the death of any partner and that his estate should have his partnership percentage in the "net monies then in the treasury of the firm, plus his like percentage in the outstanding accounts and the earned proportion of the estimated receipts from unfinished business." The will directed that the valuation for the purpose of closing out the partnership should be made by his senior surviving partner, Mr. James D. Carpenter, and by agreement between Mr. Carpenter and the executors a valuation was made of these items as of the date of death for use in the federal estate tax and New Jersey inheritance tax returns, with the further understanding that the surviving partners would pay over to the executors whatever was ultimately realized out of the valued assets.

Pursuant to this arrangement the interest of Mr. Enright in the uncollected accounts was valued at $2,055.55 and in the unfinished work at $40,855.77. These sums were reported as assets in the estate and inheritance tax returns but were not included in the income tax return made for the decedent for 1934, nor were the sums derived from these assets reported in the estate's income tax for 1934 or later years.

The Commissioner assessed a deficiency because he included in the decedent's return for 1934, under the claimed authority of § 42, *supra* note 3, the items of accounts and unfinished work. Respondents appealed to the Board of Tax Appeals. The Board decided [4] that the evidence did not show the situation of the unfinished work in sufficient detail to enable the Board to determine independently that it was not accruable. The accounts

---

[4] August 28, 1939, by memorandum opinion. Cf. Lillian O. Fehrman, Executrix, 38 B. T. A. 37.

receivable were held accruable. This left the Commissioner's assessment intact.

On appeal the Circuit Court of Appeals reversed the Board. It was of the opinion that the partnership was a tax computing unit separate from its members and that § 42 had the effect of placing the decedent "upon an accrual basis at the date of his death." Consequently his return should be made as it would have been made if the deceased used the accrual method. The Court then reasoned that the requirement of § 182 of the Revenue Act of 1934, including a partner's distributive share of the partnership earnings, whether distributed or not, in the partner's computation of his own net income, put a partner on an accrual basis in accounting for partnership earnings, irrespective of § 42. Consequently § 42 was held not to affect the partnership accounting practices. It was further determined that it was the right to receive payment which made an earning accrue and that, as Mr. Enright under the partnership agreement had no right to receive anything from the firm except his proportionate share of the cash receipts, these cash receipts were all that "accrued" to him before his death.

The last sentence of § 42 which requires the inclusion of "amounts accrued up to the date of his death" in computing net income for the period in which his death falls was added by the 1934 Revenue Act.[5] The reports recommended its addition because the "courts have held that income accrued by a decedent on the cash basis prior to his death is not income to the estate, and under the present law, unless such income is taxable to the decedent, it escapes income tax altogether."[6] So § 42

---

[5] Cf. Revenue Act of 1932, 47 Stat. 169, c. 209, § 42.

[6] H. Rep. No. 704, 73rd Cong., 2nd Sess., p. 24; S. Rep. No. 558, 73rd Cong., 2nd Sess., p. 28.

This situation followed the decision of the Court of Claims in

was drawn to require the inclusion of all amounts accrued to the date of death "regardless of the fact that he may have kept his books on a cash basis."[7] With the declared purpose of Congress in mind, we proceed to examine the meaning of the section.

As the questioned items of unfinished work appear in the partnership accounts, we must determine whether such earnings, even if accruable, are includible in the partner's return for 1934. Respondent argues, as the Circuit Court of Appeals held, that § 182[8] accrues, without any effect from the language of § 42, all the earnings that are includible in a partner's return, and that since the partnership method of keeping its books did not treat unfinished business as receipts, only the earnings actually collected are a part of the partner's distributive share under § 182.

We think such a conclusion is erroneous. The partnership agreement and the subsequent arrangement between the executors and the surviving partners called for a valu-

---

*Nichols* v. *United States*, 64 Ct. Cls. 241. A decedent on the cash basis was a member of a partnership dissolved by his death. Commissions earned before death but unpaid to the partnership were valued in the estate tax and collected by the partnership after death for payment to the executors. The Court of Claims held sums paid the executors were part of the corpus and not income.

The Board of Tax Appeals followed the reasoning of the Court of Claims. William G. Frank, Adm., 6 B. T. A. 1071; E. S. Heller, Exec., 10 B. T. A. 53; George Nichols, Exec., 10 B. T. A. 919; Estate of A. Plumer Austin, 10 B. T. A. 1055; William K. Vanderbilt, Exec., 11 B. T. A. 291; J. Howland Auchincloss, Exec., 11 B. T. A. 947; William P. Blodget, Exec., 13 B. T. A. 1243; Jackson B. Kemper, Adm., 14 B. T. A. 931; Maurice L. Goldman, 15 B. T. A. 1341.

[7] H. Rep. *supra*.

[8] "Sec. 182. Tax of Partners. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year."

ation on Mr. Enright's death and a dissolution as of that day. This necessitated an accounting of partnership earnings for this period. By the terms of the agreement, as would have been necessary anyway, the earned proportion of the unfinished business was to be valued to determine the decedent's interest in the partnership assets.[9] Assuming at this point that the unfinished business is accruable, this accounting as of the time of death would show the partnership income for the taxable year of the partnership.[10] As the net income of the partnership is to be accounted for in the deceased partner's return, without consideration of the period over which the income is earned, the fact that the payment for the unfinished business will not be collected until another taxable year is immaterial. "Circumstances wholly fortuitous may determine the year in which income, whenever earned, is taxable." [11] The "distributive share" re-

---

[9] We do not consider or decide whether this accounting for a fractional year may affect the individual returns of surviving partners. Neither do we appraise the effect of argements for continuation of an interest in the partnership after death. See *Bull* v. *United States*, 295 U. S. 247.

If the partnership had been upon an accrual basis which treated accounts as accrued upon a determination of the amount of fees, it may be that a decedent's interest would not be distributable until a later year. It might then be income to the estate, even though the value of the right to receive it was included in the estate return. A conclusion as to this is unnecessary and is pretermitted. Cf. note 23, the cases cited in note 6 and *Bull* v. *United States*, 295 U. S. 247, 255, 256–57.

[10] "Sec. 48. Definitions. When used in this title—

"(a) Taxable Year.—'Taxable year' means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under this Part. 'Taxable year' includes, in the case of a return made for a fractional part of a year under the provisions of this title or under regulations prescribed by the Commissioner with the approval of the Secretary, the period for which such return is made."

[11] *Guaranty Trust Co.* v. *Commissioner*, 303 U. S. 493, 498.

ferred to in § 182 does not mean available in cash for payment to the partner. It means only that gains attributable to the partner's interest in the firm were earned. Partnership returns may be made on a different basis of computation than those of the members.[12] Thus because of the partnership arrangement and agreement, the value of the unfinished business must be determined as of the date of death. Further, the result, under the assumption here that it is an accrual, is a distributive share and is to be carried into the partner's return. Respondent's argument that the requirement of § 182, including all distributable shares in the partner's return, puts all partnership returns on the accrual basis fails to give weight to the fact that a partnership on the cash method shows only cash receipts as a partner's distributive share. The requirement to account for a distributive share, although the share is actually not distributed, is not a requirement to account for partnership income on an accrual basis. Since a partner's return of his partnership earnings would vary, dependent upon whether the partnership used the cash or accrual method of accounting, we do not agree with respondent's suggestion.

We turn now to whether this valuation of the decedent's interest in the partnership is an accrual of income which must be reflected in the income tax or a valuation of assets only reflected in estate or inheritance reports. This partnership uses the cash receipts method. There was no customary accounting system to determine whether the value of services rendered should be accrued before payment. Under such circumstances, we are of the view that items of partnership income properly accrued should be included in the income tax return of the deceased partner. This will cause the accrued items of

---

[12] *Truman* v. *United States,* 4 F. Supp. 447; §§ 183 and 187.

partnership returns to be included in the income tax return of a deceased partner, whether the partnership method is accrual or cash.[13] Furthermore, an accrual of compensation for the unfinished business seems sound in view of the purpose of the enactment of § 42.

The meaning of "amounts accrued up to the date of his death" is clear as to fixed rent, interest, salary or wages for personal services and other similar income which may readily be attributed to a particular period. There are like deductions such as interest and taxes.[14] The uncertainty as to the meaning arises in the field of personal service from items which cannot be accounted for on a basis of successive equal units of time. Examples of the difficulty are the value, prior to a successful result, of services rendered on a contingent basis, done on a quantum meruit whether that would or would not vary with the outcome, or exploratory or preliminary steps looking towards final accomplishment.

While "accrue" and its various derivatives are not new to the nomenclature of accounting or taxation, its use has not sufficed to build it into a word of art with a definite connotation when employed in describing items of gross income. The 1913 Act [15] put the taxpayer on an actual cash receipt and disbursement basis. The 1916 Act [16] gave the taxpayer the option of reporting on either the cash or accrual basis and the 1918 Act limited the return to the method of accounting regularly employed unless otherwise directed by the Commissioner of Internal Revenue.[17] A similar provision covers the year

---

[13] The inevitable variations of "accrued" which depend upon established accounting practice do not destroy the principle.

[14] Cf. *United States* v. *Anderson*, 269 U. S. 422.

[15] 38 Stat. 114 at 166.

[16] 39 Stat. 756, §§ 8 (g) and 13 (d).

[17] 40 Stat. 1057, § 212 (b).

here in question.[18]   That the meaning to be attributed to "accrued" as used in § 42 is to be gathered from its surroundings is emphasized by § 48, Definitions, which says:

"(c) Paid, Incurred, Accrued.—The terms 'paid or incurred' and 'paid or accrued' shall be construed according to the method of accounting upon the basis of which the net income is computed under this part." [19]

It is to be noted that no change was made by the 1934 Act in the § 48 definition of "accrued." [20]   Yet, it is obvious that the definition is inapplicable since a taxpayer on a cash basis cannot have a "method of accounting" by which the meaning of accrual is fixed.   Consequently it is beside the point to give weight to provisions of the regulations or accounting practices which do not recognize accruals until a determination of compensation.[21] Such provisions when applied bring the income into succeeding years.   It has been frequently said, and correctly, that § 42 was aimed at putting the cash receipt taxpayer on the accrual basis.[22]   But that statement does not answer the meaning of accrual in this section. Accounts kept consistently on a basis other than cash receipts might treat accruals quite differently from a method designed to reflect the earned income of a cash receipt taxpayer.   Accruals here are to be construed in furtherance of the intent of Congress to cover into income the assets of decedents, earned during their life

---

[18] 48 Stat. 680, § 42.

[19] Cf. Ernest M. Bull, Exec., 7 B. T. A. 993, 995.

[20] Cf. § 48 (c) of the Revenue Act of 1932, 47 Stat. 188.

[21] Regulation 86, Art. 42–1.

[22] Lillian O. Fehrman, Exec., 38 B. T. A. 37; Estate of Wilton J. Lambert, 40 B. T. A. 802, 806; Estate of G. Percy McGlue, 41 B. T. A. 1186, 1193; *Enright* v. *Commissioner*, 112 F. 2d 919, this case below.

and unreported as income, which on a cash return, would appear in the estate returns. Congress sought a fair reflection of income.[23]

Accrued income obviously connotes more than interest. In *United States* v. *American Can Co.*,[24] this Court approved an accrual basis where "pecuniary obligations to or by the Company were treated as if discharged when incurred." In *United States* v. *Anderson*[25] accruals of fixed annual charges, e. g., taxes payable in another year, were permitted against determinable gross income. "Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the *right* to receive and not the actual receipt that determines the inclusion of the amount in gross income."[26] The completion of the work in progress was necessary to fix the amount due but the right to payment for work ordinarily arises on partial performance. Accrued income under § 42 for uncompleted operations includes the value of the services rendered by the decedent, capable of approximate valuation, whether based on the agreed compensation or on quantum meruit. The requirement of valuation comprehends the elements of collectibility.[27] The items here meet these tests and are subject to accrual.

---

[23] It is immaterial that all possibility of escaping an income tax is not barred, as for instance the increased value of asset items in an estate return. Act, 113 (a) (5) ". . . the entire field of proper legislation [need not] be covered by a single enactment." *Rosenthal* v. *New York,* 226 U. S. 260, 271; cf. *Keokee Coke Co.* v. *Taylor,* 234 U. S. 224, 227.

[24] 280 U. S. 412, 417.

[25] 269 U. S. 422, 437.

[26] *Spring City Co.* v. *Commissioner,* 292 U. S. 182, 184; *Guaranty Trust Co.* v. *Commissioner,* 303 U. S. 493, 498.

[27] Cf. Parlin, Accruals to Date of Death, 87 U. of Pa. L. Rev. 294, 301; Farrand & Farrand, Treatment of Accrued Items on Death, 13 So. Cal. L. Rev. 431.

The judgment of the Circuit Court of Appeals is reversed and the decision of the Board of Tax Appeals affirmed.

*Reversed.*