## ARCHER v. UNITED STATES.

### SAME v. DELANEY, Collector of Internal Revenue.

Civ. Nos. 5720, 5721.

District Court, D. Massachusetts.

April 30, 1948.

Stewart C. Woodworth, Albert L. Hyland and Lyne, Woodworth & Evarts, all of Boston, Mass., for plaintiff.

William T. McCarthy, U. S. Atty., and Gerald J. McCarthy, Asst. U. S. Atty., both of Boston, Mass., Theron Lamar Caudle, Asst. Atty. Gen., and Andrew D. Sharpe and Philip R. Miller, Sp. Assts. to the Atty. Gen., for defendant.

SWEENEY, District Judge.

The plaintiff is the administrator of his father's estate, and here seeks to recover from the Government two deficiency assessments made against the estate in the approximate amount of $11,000. All conditions precedent to the right to recover the refund have been satisfied. The defendant contends that the deficiencies were properly assessed and that, hence, the plaintiff cannot recover.

### Findings of Fact

The decedent, who will hereinafter be referred to as "Archer, Sr.", was employed around 1910 or 1913 by the Moxie Company, which was controlled by one Francis E. Thompson. Archer, Sr., claimed that he was induced to stay with the company by the promise of Thompson that, if he would stay with the Moxie Company during his lifetime, he would receive exactly the same amounts of money that Thompson's brother received. Archer, Sr., continued to stay with the Moxie Company and, at some time prior to his death, asserted a claim against Thompson on the basis of the foregoing promise, claiming $300,000 was due him from Thompson. No suit was brought on this claim, and it was under some negotiation when Archer, Sr., died.

As possible defenses to the claim of Archer, Sr., and as bearing upon the value of the claim at the time of his death, the Government points to the facts that the

contract was an oral one in defiance of the Statute of Frauds, that the Statute of Limitations on the contract had long since run, and that it was denied that any such contract in fact existed.

A little more than a year after Archer, Sr.'s death, Archer, Jr., who was the administrator of his estate, in settling some litigation between the Moxie Company (to which he had succeeded his father) and the said Thompson, brought about a settlement of Archer, Sr.'s claim against Thompson in the amount of $50,000. Thereafter, the Commissioner levied two alternate deficiencies alleging (1) that the $50,000 item was income to the decedent by reason of Section 42 of the Revenue Act of 1936, 49 Stat. 1666, c. 690, 26 U.S.C.A. Int.Rev. Code, § 42, which provided in part as follows: "In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amount accrued up to the date of his death * * *" and, (2), that the $50,000 item was income to the estate, on the basis that the claim at the time of the decedent's death was valueless because of the many defenses to it, and that the reciept by the estate of the $50,000 settlement figure brought that much income into the estate.

■ The Board of Tax Appeals, upon review of these alternative deficiency assessments, reversed the Commissioner in his first determination, and found that the item in question had not accrued to the decedent at the time of his death so as to bring Section 42 of the Revenue Act of 1936 into play. It is not for this Court to say whether or not the Board of Tax Appeals was correct in this determination. The narrow question presented to us is whether the $50,000 item was income to the estate, or was merely the liquidation of an asset which existed on the date of the decedent's death. No appeal was taken from the decision of the Board of Tax Appeals on its determination that the item in question was not accrued on the date of the decedent's death within the meaning of Section 42. We are of course not bound by that decision to the extent of saying

that, since the Board found that it was not income to the decedent, it must be income to the estate. It is possible that the Board was in error and that the purpose of Section 42 of the Revenue Act of 1936 has been avoided by an erroneous decision on a matter of law.

■ The instant case stands upon the pleadings, and certain admissions. There are before the Court two motions for summary judgment, one filed by each of the parties hereto. In Helvering, Commissioner of Internal Revenue v. Estate of Enright et al., 312 U.S. 636, at page 644, 61 S.Ct. 777, at page 782, 85 L.Ed. 1093, the Court attempted to define the meaning of the word "accrued" as used in Section 42 of the Revenue Act of 1934, 26 U.S.C.A. Int. Rev. Code, § 42, and stated: "Accruals here are to be construed in furtherance of the intent of Congress to cover into income the assets of decedents, earned during their life and unreported as income, which on a cash return, would appear in the estate returns. Congress sought a fair reflection of income." That case had to deal with the inclusion in the decedent's return, by reason of Section 42, of earnings of a partner in a firm of which he had been a member for the period just prior to his death. Some of the earnings were for work which was not entirely performed at the time of his death. The Court stated, at page 645 of 312 U.S., at page 782 of 61 S.Ct., that for the purposes of uncompleted operations or work partially done at the time of the decedent's death, "Accrued income under § 42 * * * includes the value of the services rendered by the decedent, capable of approximate valuation whether based on the agreed compensation or on quantum meruit. The requirement of valuation comprehends the elements of collectibility." Applying those elements to the case under consideration, the Supreme Court held that the partner's share in the firm earnings, up to the time of his death, where capable of approximate valuation, could be valued, taking into consideration the question of collectibility.

In the instant case, I think that an approximate valuation of Archer, Sr.'s claim

against Thompson could have been made at the time of his death, taking into consideration all of the claim advanced by Archer, Sr., and all of the defenses raised by Thompson. In making such a valuation, the appraisers might have taken into consideration that there was another claim pending against Thompson in the name of the Moxie Company, of which Archer, Sr., was the guiding factor at the time of his death.

The prima facie correctness of a Commissioner's ruling is considerably weakened in this case by the fact that the Commissioner made alternate rulings assessing the deficiency both against the decedent and against his estate. In the assessment in which he found that the claim had accrued to the decedent, within the meaning of Section 42, he determined that the value of the claim at the decedent's death was $50,000. This may have been correct and the Board of Tax Appeals so acknowledged. As to this assessment, however, they reversed the Commissioner on another ground.

On the narrow question whether the $50,000 item was the liquidation of an asset existing at the time of death, or in its entirety was income to the estate of the decedent, I am inclined to the former view, the basis of this view being that it was merely a question of calculating the value of the asset which the taxpayer owned. See Nichols v. United States, 64 Ct. Cl. 241; see also Supreme Court reference to same in Helvering, Commissioner of Internal Revenue v. Estate of Enright et al, supra, footnote 312 U.S. 636, at pages 639, 640, 61 S.Ct. 777. It does not follow that, because the Board of Tax Appeals ruled that this was not an accrued claim at the time of the decedent's death, the claim was valueless. This Court feels that it had an ascertainable value as of the decedent's death.

### Conclusions of Law

On the basis of the foregoing, the plaintiff's motion for summary judgment is allowed, and the defendant's motion for summary judgment is denied.