GIRARD TRUST CO. et al. v. UNITED STATES.

No. 7306.

United States District Court
E. D. Pennsylvania.
Oct. 18, 1949.

Kenneth W. Gemmill, and George Craven, Philadelphia, Pa., for plaintiff.

Andrew D. Sharpe, and Philip R. Miller, Sp. Assts. to the Atty. Gen., for defendant.

McGRANERY, District Judge.

This case arises on cross motions for summary judgment. Taxpayers, executors under the will of the decedent, seek to recover an alleged overpayment of federal income tax in the amount of $48,535.20 on the decedent's final return for the period Jan. 1, 1942 to Nov. 15, 1942, the date of his death. The Government seeks a judgment dismissing the complaint and awarding to it the sum of $2,065.94 on a counterclaim for taxes assessed and unpaid.

The decedent, Samuel P. Kenworthy, was at the time of his death a member, with three others, of a partnership with its principal place of business in Philadelphia, operating under a partnership agreement dated July 1, 1935. The firm kept its books and filed its income tax returns on an accrual basis and on the basis of a fiscal year ending June 30. The decedent kept his books and filed his returns on a cash and calendar year basis.

The partnership agreement provided that the firm should be subject to dissolution by mutual consent on June 30 of any year, and that any partner should have the right to withdraw on June 30 of any year upon giving 30 days' notice prior to such date of his intention to withdraw. The agreement further provided that upon the death of any partner the "partnership business" was to be carried on by the surviving partner or partners at their option until June 30 following the date of death. The interest of a deceased partner was to be calculated as of such June 30th, and payment to the decedent's personal representatives was to be made in a specified manner, after June 30. "The withdrawal or death of any partner or partners shall not be deemed to prevent or interfere with the continuance of the partnership business by the remaining partner or partners or to necessitate the winding up of the partnership business."

After Mr. Kenworthy's death on Nov. 15, 1942, the business was continued by the surviving partners, in accordance with the agreement, until June 30, 1943. But shortly after Nov. 15, 1942, the surviving partners determined the decedent's share of the profits accrued to the partnership from July 1, 1942 to Nov. 15, 1942, in the amount of 55,559.86 (subsequently increased to $55,685.27 upon the audit of the partnership income by the Commissioner). On March 15, 1943 the taxpayers filed an individual income tax return for the decedent, reporting an income of $210,506.91 (including the $55,685.27 share of partnership profits up to date of death), and a total income tax due of $159,285.12. By reason of the inclusion of the share of partnership profits as determined at date of death, the executors paid the $48,535.20 tax here in controversy.

Taxpayers filed, on April 3, 1943, an amended return for the Jan. 1 to Nov. 15 period, reporting a gross income of $209,765.12 and a tax due of $157,219.18. An additional assessment of $347.17, by reason of the audit of the Commissioner, above mentioned, was paid. However, it appears that the total assessment by the Commissioner was $159,628.29, and that only $157,562.35 has been paid, leaving the $2,065.94 assessed and unpaid.

Notwithstanding the inclusion of the decedent's calculated partnership income to the date of his death, no withdrawals or distributions were made to the estate until June 30, 1943, when an accounting was made of the decedent's capital interest and share of the profits, taking into account profits and losses accruing subsequent to decedent's death. On July 1, 1943, the taxpayers received from the surviving partners $1,151,851.23 in payment of decedent's capital interest and profits computed as of June 30, 1943, of which the taxpayers claim the sum of $49,284.33 was profits for the period July 1, 1942 to June 30, 1943, the partnership fiscal year.

On Dec. 30, 1943, taxpayers filed what purported to be a formal consent under section 134(g) of the Revenue Act of 1942, 26 U.S.C.A. § 126 note, claiming thereby

that section 42(a) [1] of the Internal Revenue Code, 26 U.S.C.A. § 42(a), sec. 134(a) of the Act of 1942, was rendered applicable, excluding decedent's income from his final return on the ground that it was accrued solely by reason of his death. Consequently, they assert, it is, under section 126, 26 U.S.C.A. § 126,[2] section 134(e) of the 1942 Act, includible in the income of his estate by virtue of the consent of the executors that the income be so included, filed under section 134(g), the section rendering the 1942 amendment applicable to the year 1942. Pursuant to the consent that the $55,685.27 be included in the income of the decedent's estate taxpayers filed a claim for refund in the amount of $47,133.73, the amount which, they asserted, the tax of the decedent for the period Jan. 1 to Nov. 15 would be reduced. This claim was rejected by the Commissioner.

On March 7, 1946, they filed a second claim for the same period in the amount of $48,535.20, on the theory that, because the partnership agreement continued the business, the decedent was not entitled to any share of the partnership income at the time of his death; that no proportionate share could be computed until the end of the partnership fiscal year on June 30, 1943, and that the decedent's death on Nov. 15, 1942 provided no occasion for computation

of partnership profits taxable to him as of that date. The Commissioner also rejected this claim.

Taxpayers instituted this action to recover $48,535.20, and the Government filed a counterclaim for $2,065.94 in assessed and unpaid taxes.

The first problem arises in this case by virtue of the fact that, while the executors of the deceased partner were required to file a return for such income as had been earned by decedent up to his death, Internal Revenue Code § 47(g), 26 U.S.C.A. § 47(g), Section 188 [3] of the Code 26 U.S.C.A. § 188, permits a partner whose taxable year is different from that of the partnership to compute his net income based upon the income of the partnership for any "taxable year" of the partnership ending within the taxable year of the partner. And here there existed a partnership agreement providing that, upon the death of a partner, the survivors may carry on the partnership business until the end of the partnership fiscal year, with the interest of the deceased partner to continue subject to all the risks of the enterprise, the proportionate share of the deceased partner in the profits and losses of the enterprise not to be determined until the end of the partnership fiscal year. Therefore, the issue is whether the partnership agreement is effective to

1. "Sec. 42. Period in which items of gross income included

"(a) General rule. The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. In the case of the death of a taxpayer whose net income is computed upon the basis of the accrual method of accounting, amounts (except amounts includible in computing a partner's net income under section 182) accrued only by reason of the death of the taxpayer shall not be included in computing net income for the period in which falls the date of the taxpayer's death."

2. "Sec. 126. Income in respect of decedents

"(a) Inclusion in gross income.

"(1) General rule. The amount of all

items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:

"(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent."

3. "Sec. 188. Different taxable years of partner and partnership

"If the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner."

preclude, for tax purposes, the realization of partnership income by the decedent as of the day of his death.

The taxpayers' contention is that by virtue of the partnership agreement, the partnership, under Pennsylvania law, was not dissolved by decedent's death on Nov. 15, 1942; but that it continued until June 30, 1943. Consequently, there was no partnership accounting due upon the death of the decedent, and no profits accrued to him at that time. And since he had no right, on Nov. 15, 1942, to demand any part of the partnership profits, they were all taxable to his estate at the end of the partnership fiscal year. The Government advances, among other contentions, the argument that the partnership was by law dissolved upon decedent's death. Each party supports its contention with an imposing array of authorities.

■ I believe, however, that a determination of this point is not crucial to the decision. See Rabkin & Johnson, "The Partnership Under the Federal Tax Laws", 55 Harv.L.Rev. 908, 935. In the absence of specific statutory limitation, the income of a partnership is treated as the income of the partners. Helvering v. Enright's Estate, 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093; Neuberger v. Commissioner, 311 U.S. 83, 61 S.Ct. 97, 85 L.Ed. 58; First Mechanics Bank v. Commissioner, 3 Cir., 91 F.2d 275; Jennings v. Commissioner, 5 Cir., 110 F.2d 945; Rossmoore v. Commissioner, 2 Cir., 76 F.2d 520; see Sec. 181, Internal Revenue Code, 26 U.S.C.A. § 181. The taxpayers argue, and cite cases for the proposition, that the courts consider a partnership as a unit separate and distinct from the partners and view the partners as owning only a chose in action or a right to accounting for partnership surplus. To some extent and for some purposes, this contention holds true. Judge Learned Hand, in Commissioner of Internal Revenue v. Lehman, 2 Cir., 165 F.2d 383, 385, stated that " * * * while the (partnership) never became a jural person, capable of being sued and suing as such, in the administration of its affairs it did become for most purposes an entity; and it was upon this traditional structure that Congress fitted the taxation of partnerships, *although it levied the income tax upon the separate distributive shares of the partners, whether they were distributed or not."* (Emphasis supplied.)

Judge Hand had previously said, in Rossmoore v. Commissioner, supra, 76 F.2d at page 521: "The revenue acts from 1913 forward * * * have consistently retained the common-law view, treating all income of the firm as taxable to the partners, whether distributed or not; and ignoring the firm as a taxpayer except for purposes of information." This principle of the Rossmoore case has been cited with approval by the Third Circuit Court of Appeals in First Mechanics Bank v. Commissioner, supra. Perhaps a clue to the decision in Estate of Henderson v. Commissioner, 5 Cir., 155 F.2d 310, 164 A.L.R. 1030 is that court's view of the effect to be given to Louisiana partnership law which regards the partnership, by a fiction of law, as the owner of partnership property, rather than the partners individually. Absent the fiction of partnership entity, the partners cannot be insulated from partnership income as it is earned. Hence, as the partnership earns income, the partners, in their proportionate shares, earn it.

But the taxpayers maintain that the partnership agreement must alter this result, for the decedent had no right to the income on the day of his death. The Government cites a number of cases wherein partnership agreements have provided that the share of the profits earned by a deceased partner up to his death should remain in the business for a period of time after his death, subject to the risks of the business, and it has been held that such agreements have in no way affected the incidence of the tax on the decedent. Darcy v. Commissioner, 2 Cir., 66 F.2d 581, certiorari denied 290 U.S. 705, 54 S.Ct. 372, 78 L.Ed. 606; People's-Pittsburgh Trust Co. v. U.S., 10 F.Supp. 139, 80 Ct.Cl. 716; First Trust Co. of Omaha v. U. S., D.C., 1 F.Supp. 900, 76 Ct.Cl. 481; Davison v. Commissioner, 20 B.T.A. 856, affirmed per curiam 2 Cir., 54 F.2d 1077; Smith v. Commissioner, 26 B.T.A. 778, appeal dismissed, 4 Cir., 67 F.2d 167; City Bank

Farmers Trust Co. v. Commissioner, 29 B. T.A. 190. But the taxpayers point out that there was no showing in any of these cases that the decedent was not entitled to receive his share of the partnership profits at the time of his death.

As a practical matter, there is much merit in the taxpayers' contention. Where the partnership business (if not the partnership) continues beyond the death of a partner, the accounting period of the enterprise should not be lightly ignored, especially where the agreement has legitimate purposes aside from the tax problem, and the artificial splitting of such a period is not required to prevent the avoidance of tax. In such a situation, partnership gains subsequent to a partner's death might result in greater taxes to the Government by taxing all the income to the estate, than by taxing a part of it to the decedent. Further, there may be administrative difficulties incident to the determination of the taxable income of the decedent. However, the recognition of a separate "taxable year" for the partnership is basically an accounting expedient, and the administrative difficulties occasioned by the adjustments upon a partner's death are insufficient, in my view, to induce an aberration from the basic principle of taxing income. This is not merely an accounting problem. Consequently, the shifting of income by agreement of the parties, even though valid for state law purposes, cannot frustrate the dominant intent of Congress to tax income to those earning it. See Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 288, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135.

The agreement of the parties here is actually merely a contract that, upon the death of one of them, his earnings will be left in the business, subject to the risk of loss or gain, until the end of the partnership fiscal year. This, in my opinion, does not have the effect of gainsaying that a partner has earnings at his death. It seems to me that a partner has agreed, in effect, that should the business sustain losses after his death, he assigns to his partners that portion of his earnings, as determined by the subsequent accounting, in excess of what would be his distributable share had he lived, in return for the promise of the other partners to assign to his estate, should there be subsequent business gains, the difference between his share at date of death and what would have been his share had he lived. So regarding the agreement, even though it may be entirely legitimate and valid for other purposes, it nevertheless cannot affect the decedent's taxable income. See Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655.

But the case of U. S. v. Wood, 3 Cir., 1935, 79 F.2d 286, 287, is asserted to be controlling on the point that there can be no taxation of partnership income to the decedent, which he had no right, at the time of his death, to demand. The court there did make such a statement, but it does not appear to be the basis of the decision. That case involved a suit brought by the Government to recover an erroneous refund. Since there had been no audit of the partnership accounts as of the date of the deceased partner's death, the Government, bearing the burden of proving the refund erroneous, merely argued that his share of the partnership income at the date of death was a pro-rated amount based upon the final accounting at the end of the partnership fiscal year. The court, however, refused to accept the assumption of the correctness of the proration as being based on fact, and held that the Government had not met its burden of establishing that the profits were earned during the decedent's lifetime. The comment that the decedent had no right, at the date of his death, to demand any share of the partnership profits, was made by way of distinguishing the case of Darcy v. Commissioner, supra. There, with the Government "aided by a presumption of correctness which is present in every suit for the collection of taxes", it was not apparent whether the deceased partner did or did not have the right to draw upon his profits, a fact which was mentioned as an additional ground for supporting the position. The ratio decidendi, therefore, of the Wood case is that no share of the partnership

earnings was taxable to the decedent in the absence of evidence that any part was earned during his lifetime. The implication is that if the Government had established the existence of a drawing account, or if there had been an audit of the partnership accounts showing precisely the amount attributable to the decedent upon the day of his death, that amount would have been taxable to him. In the instant case, there has been such an audit. The Supreme Court has said that "the 'distributive share' referred to in § 182 does not mean available in cash for payment to the partner," but merely that "gains attributable to the partner's interest in the firm were earned." Helvering v. Enright's Estate, supra, 312 U.S. at page 641, 61 S. Ct. at page 781. And the tax is imposed upon a partner's proportionate share of the income even if "it may not be currently distributable, whether by agreement of the parties or by operation of law." Heiner v. Mellon, 304 U.S. 271, 281, 58 S.Ct. 926, 931, 82 L.Ed. 1337.

■ Supreme Court authority on the precise issue for the Government's position is afforded in Bull v. U. S., 295 U.S. 247, 55 S.Ct. 695, 696, 79 L.Ed. 1421. There, the partnership agreement provided that upon the death of a partner, the survivors should continue the business for one year, the decedent's estate to "receive the same interests, or participate in the losses to the same extent" as the deceased partner would, if living. Bull died on Feb. 13, 1920, and the firm continued business until the end of the year. His estate received $24,124.20 as profits earned before Feb. 13, and $200,117.09 as profits earned from Feb. 13 until the end of the year. In issue was the income tax on the $200,117.09 and the estate tax on Bull's partnership interest. The Court held, 295 U.S. at pages 254-255, 55 S.Ct. at page 697: "We concur in the view of the Court of Claims that the amount received from the partnership as profits earned prior to Bull's death was income earned by him in his lifetime and taxable to him as such * * *. We also agree that the sums paid his estate as profits earned after his death were not corpus but income received by his ex-

ecutor, and to be reckoned in computing income tax for the years 1920 and 1921. * * * The portion of the profits paid his estate was therefore income and not corpus; and this is so whether we consider the executor a member of the old firm for the remainder of the year, or hold that the estate became a partner in a new association formed upon the decedent's demise." In holding that $200,- 117.09 was taxable as income to the estate and that only the $24,124.20 was subject to the estate tax, the ruling that the $24,- 124.20 was taxable as income to the decedent was a necessary preliminary, in order to establish that it should not be added to the larger amount found taxable as income to the estate, and also to establish that the smaller amount was the property of the estate at decedent's death and subject to estate tax. It is true, of course, that in the Bull case the decedent's executors voluntarily included in the decedent's return the share of partnership profits earned prior to the date of death, and the question of the tax on such profits was neither directly in issue nor expressly argued. Consequently, the pronouncement of the Court on that issue is not authority compelling in the highest degree. But I cannot agree that it is mere dictum, since it was a determination necessary to the decision of the case. See Degener v. Anderson, 2 Cir., 77 F.2d 859. And the weight of the authorities, I am persuaded, is at variance with the conclusions reached in Estate of Henderson v. Commissioner, 5 Cir., 1946, 155 F.2d 310, 164 A.L.R. 1030, and Estate of Mnookin v. Commissioner, 1949, 12 T.C. 744, which followed the Henderson case.

■ Taxpayers urge, as an alternative ground for recovery, section 42(a) of the Internal Revenue Code, as amended by section 134(a) of the Revenue Act of 1942, and section 126(a) of the Code added in the same year. For the year 1942, section 42(a), as amended, was made applicable only to those taxpayers who formally consented to have their tax computed under section 126(a). Revenue Act of 1942, section 134(g). The latter section taxes to the estate items of gross

income in respect of a decedent "which * * * are not properly includible in respect of the taxable period in which falls the date of the decedent's death." However, if, under section 42(a) of the Code, the income is properly includible in the decedent's return, then decedent's executors are not entitled to have the tax computed under section 126(a).

Section 42(a), prior to its amendment by the Revenue Act of 1942, was originally intended to prevent a decedent on a cash basis from escaping income tax on income accrued but uncollected at the time of his death. The Revenue Act of 1934, 26 U.S. C.A.Int.Rev. Acts, page 679, thus made provision for including in a decedent's final return "amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior method." But this provision as construed by the courts required the inclusion in the decedent's final return of income which had not been realized under the accounting method of the taxpayer and which might not be received by his executors until several years after his death. See Helvering v. Enright's Estate, supra. It is clear from the legislative history of the amended Section 42(a) that Congress considered the operation of the original section as too harsh and intended to alleviate the hardship occasioned by this interpretation. The amendment prevents the taxing of additional accruals of income to an accrual basis taxpayer which arise solely by reason of his death, but expressly excepts amounts includible in computing a partner's income from the partnership.

Thus it is apparent that Section 42(a) as amended was intended to alleviate no hardship to which this decedent would have been subject under the former Section 42. Entirely apart from that Section as it existed in 1934, decedent as a partner on a cash basis would have been taxable on his share of partnership income. For tax purposes, the decedent partner's share of partnership earnings are not accruals caused by his death but are his actual earnings. Section 42(a) as amended was not intended to affect the distributive share of partnership income.

Furthermore, the amended 42(a) is specifically applicable only to those decedents "whose net income is computed upon the basis of the accrual method of accounting." Taxpayer argues that the section eliminated the express requirement that the return of a cash basis decedent include items of income accrued at the time of his death, and includes no exception to the provision dealing with accrual basis decedents, requiring the return of a cash basis decedent to include such income; consequently, the section cannot be confined in its operation to accrual-basis decedents. However, this argument lacks force because, as pointed out above, the taxation of the income of a cash basis decedent partner is not dependent upon Section 42(a).

Finally, even if 42(a) were otherwise applicable, it is expressly inapplicable to "amounts includible in computing a partner's net income under section 182", a clear indication that for tax purposes a partner's share of partnership earnings are not merely accruals caused by his death, but represent what he has actually earned.

Accordingly, an order will be entered granting the Government summary judgment on its cross-motion, dismissing the taxpayers' complaint and awarding judgment on the counterclaim.