892

FIRST NAT. BANK & TRUST CO. OF
MONTCLAIR, N. J., et al. v.
MANNING.
Civ. A. No. 10289.

United States District Court
D. New Jersey.
Sept. 11, 1951.

Lum, Fairlie & Foster, Newark, N. J., for plaintiffs.

Grover C. Richman, Jr., U. S. Atty., Roger M. Yancey, Asst. U. S. Atty., Newark, N. J., Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, Fred J. Neuland, Sp. Assts. to Atty. Gen., for defendant.

FORMAN, Chief Judge.

This is a suit wherein plaintiffs as executors of the estate of William J. Wells, deceased, seek to recover the sum of $52,320.-71, plus statutory interest thereon, representing alleged overpayments assessed against and collected from plaintiffs on account of individual federal income taxes determined to be due from the decedent for the taxable period January 1, 1940 to March 22, 1940. All conditions precedent to the right to sue for recovery of the refund have been satisfied. The material facts are not in dispute and have been

stipulated by the parties. Pursuant thereto they are found as follows:

## Findings of Fact

1. The First National Bänk and Trust Company of Montclair, New Jersey, a banking corporation, and Anna Wells Fitch, plaintiffs herein, are the executors of the estate of William J. Wells, deceased, who died on March 22, 1940.

2. On February 1, 1939, the decedent entered into a written agreement[1] with L. Bamberger & Co., a New Jersey corporation. This contract, among other things, provided that in consideration of the decedent remaining in the employ of the corporation for a period of ten years, commencing February 1, 1939, the decedent was to receive a salary of $12,500 per annum. In case of his death prior to the end of the ten-year period the corporation agreed to pay to the decedent's estate "an amount equal to the excess, if any, of One Hundred and Five Thousand Dollars (105,000) over the aggregate of the amounts to be paid to you as salary since February 1, 1939." This amount was payable to the decedent's estate "either in a lump sum or in equal annual installments for the unexpired portion of the ten-year period."

3. After the death of the decedent on March 22, 1940, plaintiffs, as executors of his estate, elected to receive a lump sum payment under the terms of the agreement, and pursuant thereto the sum of $91,458-.33 was paid by the corporation to plaintiffs on August 1, 1940. Plaintiffs reported the amount so received in the federal estate tax return of the decedent.

4. On June 2, 1945, the Commissioner of Internal Revenue notified plaintiffs of a deficiency in the income tax liability of the decedent for the period from January 1, 1940 to March 22, 1940, the date of death, in the amount of $41,537.47, on the basis that under § 42(a) of the Internal Revenue Code, 26 U.S.C. § 42(a), the lump sum payment of $91,458.33 should have been treated as taxable income accrued to the decedent and that it should have been included in the decedent's income tax return for the taxable period from January 1, 1940 to March 22, 1940.

5. The deficiency, plus interest thereon in the amount of $10,783.24, or a total of $52,320.71, was timely paid by the plaintiffs to the Collector. On August 24, 1945, plaintiffs filed a timely claim for refund with the Collector and on January 27, 1947, the claim was officially disallowed by the Commissioner of Internal Revenue.

1. "L. Bamberger & Co.
"Executive Offices      "February 1, 1939
"Mr. William J. Wells
"L. Bamberger & Co.
"Newark, N. J.
"Dear Sir:
"This will confirm the understanding between us with respect to your employment by this corporation from and after February 1, 1939, on which date you resigned as President of the corporation, your resignation to be effective as of April 26, 1939.
"It is mutually agreed that you shall remain in the employ of the corporation for a period of ten years commencing February 1, 1939, during which period you shall render such services to the corporation, in an advisory capacity, as shall be assigned to you from time to time by the Board of Directors or the President of the corporation.
"It is also mutually agreed that during that ten-year period you will not engage, directly or indirectly, in any capacity in the retail merchandising business in the City of Newark, New Jersey.
"During that ten-year period you shall receive a salary of $12,500 per annum. In case of your death prior to the end of such ten-year period, the corporation will pay to your estate an amount equal to the excess, if any, of One Hundred and Five Thousand Dollars (105,000) over the aggregate of the amounts so paid to you as salary since February 1, 1939. Such amount shall be paid to your estate either in a lump sum or in equal annual installments for the unexpired portion of the ten-year period.
"Your acceptance signed at the foot of the enclosed copy of this letter will constitute the agreement between us.
                "Very truly yours,
                "L. Bamberger & Co.
                "By Richard Weill
                  V-P. & Sec'y.
"Accepted:
"Wm. J. Wells"

6. After the assessment and payment of the aforementioned deficiency in the tax and interest, plaintiffs filed a claim for refund of a portion of the federal estate taxes paid in behalf of the decedent's estate upon the ground that the additional income tax and interest paid represented an additional debt or deduction for the purpose of determining decedent's net estate for federal estate tax purposes. Thereafter, the Commissioner allowed a refund to plaintiffs of a portion of the federal estate taxes and interest thereon in the total amount of $6,787.77, which was refunded to plaintiffs on March 6, 1946.

The parties have agreed that in the event a final judgment is entered herein entitling plaintiffs to a judgment for the amount sought to be recovered in this action, the sum of $6,787.77, representing the amount of estate tax and interest refunded to plaintiffs, shall be considered as having been erroneously refunded and that the defendant would in this event be entitled to offset against such judgment the amount of the estate tax refund, plus statutory interest thereon.

## Discussion

The question presented is whether § 42 (a) of the Internal Revenue Act of 1938, the applicable statutory provision, required the inclusion in the gross income of the decedent for the taxable period ending with his death of the sum of $91,458.33, received during the year 1940 by the plaintiffs, as executors of the decedent's estate, under the terms of the employment contract entered into by the decedent prior to his death. Section 42(a) provided as follows: "(a) General rule. The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. *In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which*

*falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period.*" (Italics added.)

Applying § 42(a) to the facts of this case, we find that the resolution of the issue herein depends upon the construction of "accrued" in the statute. Plaintiffs contend that since § 42(a) authorizes the tax only upon amounts accrued up to the date of the taxpayer's death, the events which determine the right and the amount of payment did not, and could not, occur during the period in which fell the date of decedent's death. They maintain that neither the decedent nor the estate had any right to the payment as long as the decedent lived, and that the right of the estate to the payment in question was conditioned on the death of the decedent before February 1, 1949 and an election by the executors to take a lump sum rather than periodic payments. The defendant, on the other hand, takes the position that § 42(a) must be construed in the light of the legislative history surrounding its enactment, and that when viewed in this setting the words "amounts accrued up to the date of his death" come to mean amounts which clearly reflect the taxpayer's entire income up to the date of his death. He submits that the proper interpretation of § 42(a) is controlled by the decision of the Supreme Court in Helvering v. Enright, 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093.

The last sentence of § 42(a) was first enacted in § 42 of the Revenue Act of 1934, c. 277, 48 Stat. 680, and the Congressional Committee reports recommending its addition indicate that it was intended to tax items of income earned during the life of the decedent which would otherwise escape all taxation because the "courts have held that income accrued by a decedent on a cash basis prior to his death is not income to the estate, and under the present law, unless such income is taxable to the decedent, it escapes income tax altogether."[2]

---

2. H.Rep.No.704, 73d Cong., 2nd Sess., p. 21; S.Rep.No.558, 73d Cong., 2nd Sess.,

p. 28. The apparent reference is to the decision of Nichols v. United States, 64

The Enright case, supra, involved the construction of the word "accrued" under § 42 and the Supreme Court indicated that a definition restricted according to the taxpayer's method of accounting would not be of use but that a much broader construction in line with the congressional purpose underlying the enactment of the section would be followed. In that case the Court held that § 42 required the inclusion, as accruable items, in a decedent's gross income for the period ending with his death, of his share of the earned portion of the estimated receipts from the unfinished business of the partnership, valued as of the date of his death, although both the decedent partner and his firm kept their accounts and made their income tax reports on a calendar year cash receipts and disbursements basis. Justice Reed, speaking for the Court, stated:

"While 'accrue' and its various derivatives are not new to the nomenclature of accounting or taxation, its use has not sufficed to build it into a word of art with a definite connotation when employed in describing items of gross income. * * * That the meaning to be attributed to 'accrued' as used in § 42 is to be gathered from its surroundings is emphasized by § 48, Definitions, which says:

" '(c) Paid, incurred, accrued. The terms "paid or incurred" and "paid or accrued" shall be construed according to the method of accounting upon the basis of which the net income is computed under this Part.'

"It is to be noted that no change was made by the 1934 Act in the § 48 definition of 'accrued.' Yet, it is obvious that the definition is inapplicable since a taxpayer on a cash basis cannot have a 'method of accounting' by which the meaning of accrual is fixed. Consequently it is beside the point to give weight to provisions of the regulations or accounting practices which do not recognize accruals until a determination of compensation. Such provisions when applied bring the income into succeeding years. It has been frequent-

ly said, and correctly, that § 42 was aimed at putting the cash receipt taxpayer on the accrual basis. But that statement does not answer the meaning of accrual in this section. Accounts kept consistently on a basis other than cash receipts might treat accruals quite differently from a method designed to reflect the earned income of a cash receipt taxpayer. Accruals here are to be construed in furtherance of the intent of Congress to cover into income the assets of decedents, earned during their life and unreported as income, which on a cash return, would appear in the estate returns. Congress sought a fair reflection of income."

\*     \*     \*     \*     \*     \*

" 'Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the *right* to receive and not the actual receipt that determines the inclusion of the amount' in gross income.' The completion of the work in progress was necessary to fix the amount due but the right to payment for work ordinarily arises on partial performance. Accrued income under § 42 for uncompleted operations includes the value of the services rendered by the decedent, capable of approximate valuation whether based on the agreed compensation or on quantum meruit. The requirement of valuation comprehends the elements of collectibility. The items here meet these tests and are subject to accrual." 312 U.S. at pages 643–645, 61 S.Ct. at page 781, 85 L. Ed. 1093.

In line with this decision courts have recognized that accrued income under § 42 "may be something different than what a living taxpayer on an accrual basis may record as accrued income." Bach v. Rothensies, 3 Cir., 124 F.2d 306, 307, 142 A.L.R. 210, certiorari denied 316 U.S. 366, 62 S. Ct. 1035, 86 L.Ed. 1742.

■ The lump sum of $91,458.33 which the plaintiffs received as executors of the decedent's estate unquestionably represents compensation due decedent for services rendered by him. That sum was payable

Ct.Cl. 241. followed in many subsequent cases. This sentence of the statute was

eliminated in the Revenue Act of 1942. (Infra.)

pursuant to the employment contract and, therefore, the right to the payment represented consideration for the services rendered by the decedent. As such it clearly was an item of gross income within the definition of § 22(a) of the Revenue Act of 1938, 26 U.S.C. § 22(a). See U. S. v. Archer, 1 Cir., 174 F.2d 353, 356.

Furthermore, the work under the employment contract had been performed by the decedent up to the date of his death and thus, the right to the additional compensation, then accrued to his credit for the benefit of his estate. Suit could have been brought under the contract to enforce the right of payment. I cannot agree with plaintiffs that death was an event which had to occur before the amount in question "accrued", as that term is used in § 42. All conditions to be performed by decedent under the contract had to occur *prior* to his death and his death merely determined the incidence and time of payment. In the light of the interpretation of § 42 by the Supreme Court in the Enright case, the amount paid to the executors under the terms of the employment contract accrued as of the date of decedent's death in 1940 and was properly includible in the income tax of the decedent for that year.[3] •

Moreover, if the view of the plaintiffs were to be sustained, the amount in question would now escape income taxation altogether. Plaintiffs argue that this situation is not a ground for imposing a tax without statutory authority. But, this is the very situation which § 42 was designed to avoid and thus this result becomes important in the interpretation of the section. This is unlike the situation presented in the case of Putnam's Estate, v. Commissioner, 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023, cited by the plaintiffs. In that case there was no question that an income tax was to be imposed. The only issue was whether the taxpayer should be the decedent, or his estate, or the beneficiaries. It became important upon whom the tax fell as the sum assessed might vary according

to the bracket of the taxpayer. In the instant case, if the plaintiffs had wished to shift the incidence of the income tax to either the estate or the beneficiaries thereunder, they could have taken advantage of the relief section provided for in the Revenue Act of 1942 which was designed to minimize the effect of including in the final return of the decedent, filed for the period prior to his death, gross income that could have been received over a period had the decedent lived. Section 134(a) of the Revenue Act of 1942 amended § 42 of the Internal Revenue Code so as to provide that "In the case of the death of a taxpayer * * * amounts * * * accrued only by reason of the death of the taxpayer shall not be included in computing net income for the period in which falls the date of the taxpayer's death." Section 126(c) (1) of the Internal Revenue Code, 26 U.S.C. § 126(c) (1), enacted in § 134(e) of the Revenue Act of 1942 provided that the amount of all items of gross income of a decedent not properly includible in the taxable period in which falls the date of his death or a prior period shall be included in the gross income for the taxable year when received, or either the estate of the decedent, or the person who acquires the right to the amount from the decedent's estate. Section 134(g) of that Act gave this provision a retroactive effect which would have included the period here in question, provided that there were filed with the Commissioner of Internal Revenue certain consents by the fiduciaries representing the estate and by designated beneficiaries. However, the plaintiffs have failed to file the necessary consents so as to make these ameliorative provisions applicable to their case. That the plaintiffs, as executors, had already elected to take the lump sum payment prior to the passage of these provisions and thus could not have taken advantage of reporting the income in nine separate installments does not derogate from the scope of coverage of § 42(a) to a period prior to the date of the passage

---

3. See I.T. 3708 (C.B.1945-2-11935), Ruling by Bureau of Internal Revenue to the same effect; cf. I.T. 3315 (C.B.1939-2-164) revoked.

of the 1942 Revenue Act nor from the effect of the ameliorative provisions of that Act.

### Conclusion of Law

It follows, therefore, that the Collector properly included the amount received by the plaintiffs, pursuant to the decedent's contract of employment in the gross income of the decedent for the taxable period ending with his death and he is entitled to judgment in his favor that plaintiffs' suit should be dismissed.

An order in conformity with this opinion should be settled.