PHILIP APKIN AND SARAH APKIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 39793-84.     Filed April 16, 1986.

*Joan Apkin*, for the petitioners.
*Ellen Pilsecker*, for the respondent.

OPINION

RAUM, *Judge*: The Commissioner determined a $6,083.85 deficiency in the 1981 income tax of petitioners, husband and wife. After concessions, the sole issue relates to the includability in petitioners' gross income of a portion of the interest accrued on Series E United States savings bonds upon their redemption. The case was submitted fully stipulated. An abbreviated statement of facts will suffice for present purposes.

---

Dora Apkin, the mother of petitioner Philip Apkin (hereinafter sometimes referred to as petitioner), purchased 49 Series E bonds over the years 1948 and 1953 through 1959 of an aggregate face value of $5,125, at a total cost of $3,843.75. All of the bonds were issued to "Philip Apkin or Dora Apkin as co-owners". The bonds were held by the mother until her death on May 5, 1979, when petitioner succeeded to them as sole owner. He held them until June 23, 1981, when he had them redeemed. The amount which he then received included all of the interest accrued on the bonds from the dates of their respective purchase until redemption. In their 1981 income tax return, petitioners failed to report as income any of the interest thus received. In his notice of deficiency the Commissioner undertook to increase petitioners' income by the total amount of such interest. Petitioners now concede that they are accountable for that portion of the interest accrued after the decedent's death. They dispute merely the Commissioner's attributing to them the portion of the interest accrued up to the date of death.[1]

The decedent had not reported any of the interest on the bonds that accrued during her lifetime, and in fact did not file any Federal income tax returns in the years involved since her income was not sufficient to require such filing even if the accrued interest were included in her reportable income each year.[2] It is this circumstance upon which petitioners rely to support their position that petitioner was not chargeable with that portion of the interest received by him on redemption that was allocable to the period up to the date of his mother's death. We hold for the Commissioner.

All the accrued interest received by petitioner upon redemption is chargeable to him, including that portion accrued during the period up to the death of his mother.

---

[1]We have not undertaken to set forth the respective amounts since the stipulated "total redemption value of the bonds' as of the date of the decedent's death was stated to be $8,594.83 and the total amount received by petitioner in redemption only some 2 years thereafter was stated to be $14,123.56, reflecting an unlikely enhancement in value over such a comparatively short period. However, we leave it to the parties to deal with the matter appropriately in their agreement upon the computation that will be required in connection with the decision to be entered under Rule 155.

[2]Nor was any Federal estate tax return filed on her behalf because her gross estate (including accrued interest on the bonds) was not large enough to require filing such a return.

This result is required by section 691, I.R.C. 1954, concerning "income in respect of a decedent". Section 691 provides in pertinent part:

SEC. 691(a). INCLUSION IN GROSS INCOME.—

(1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period * * * shall be included in the gross income, for the taxable year when received, of:

\* \* \* \* \* \* \*

(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, * * *

Plainly, these provisions are applicable here unless the interest accrued up to the time of the decedent's death was properly includable in her income for the taxable period ending with the date of her death or a prior period. Rev. Rul. 64-104, 1964-1 C.B. (Part 1) 223. And it is equally plain to us that such interest was not includable in the decedent's gross income for any period by reason of section 454(a) of the Code, which provides:

SEC. 454. OBLIGATIONS ISSUED AT DISCOUNT.

(a) NON-INTEREST-BEARING OBLIGATIONS ISSUED AT A DISCOUNT.—If, in the case of a taxpayer owning any non-interest-bearing obligation issued at a discount and redeemable for fixed amounts increasing at stated intervals or owning an obligation described in paragraph (2) of subsection (c), the increase in the redemption price of such obligation occurring in the taxable year does not (under the method of accounting used in computing his taxable income) constitute income to him in such year, such taxpayer may, *at his election made in his return for any taxable year*, treat such increase as income received in such taxable year. If any such election is made with respect to any such obligation, it shall apply also to all such obligations owned by the taxpayer at the beginning of the first taxable year to which it applies and to all such obligations thereafter acquired by him and *shall be binding for all subsequent taxable years*, unless on application by the taxpayer the Secretary permits him, subject to such conditions as the Secretary deems necessary, to change to a different method. * * * [Emphasis supplied]

It is clear that petitioner's mother did not make an election under section 454(a). That provision, on its face, requires that such an election be made in the taxpayer's tax return. Since petitioner's mother did not file a return in any year after the purchase of the first savings bond, she could not possibly have made the election "in the manner and in

the time prescribed by Congress" as an election under section 454(a) must be made in order to be effective. Cf. Rev. Rul. 55-655, 1955-2 C.B. 253, 254. By remaining silent, she in effect made an election to have the interest included in her reportable income in the year or years of maturity (as extended) or of redemption prior thereto. Even though she was not required to file a return, there was nothing to preclude her from doing so in order to make the election and thus make sure that the interest actually received in a later year attributable to accruals in earlier years would not be taxed in such later year. Further, the fact that she was not required to file a tax return[3] in no way excused her from notifying the Commissioner of her intent to make an election. Cf. *Atlantic Veneer Corp. v. Commissioner*, 85 T.C. 1075 (1985). If it did, the election's character as one binding on the taxpayer for all subsequent years would be meaningless as a practical matter since she could then, if her income increased sufficiently in any one year to warrant it, reverse her election without the knowledge of the IRS. Nor does it appear in this record that, as permitted by Rev. Rul. 68-145, 1968-1 C.B. 203, the decedent's executor or other representative elected under section 454 to include the previously unreported interest in decedent's gross income on a final income tax return that could have been filed, or that if such a return had been filed and election made, there would not have been at least some income tax liability.

The decedent neither redeemed the bonds nor held them to final maturity. She continued to hold them up to the time of her death in 1979; only in 1981 were they redeemed by petitioner. At her death, the bonds purchased in 1948 had not yet finally matured; they had an extended maturity period of 40 years from issue so that final maturity would occur in 1988. 31 C.F.R. sec. 316.8(a)(2) (1985). Similarly, those bonds purchased from 1953 to 1959 would not reach final maturity until the 1990s. 31 C.F.R. sec. 316.8(a)(3) (1985).[4]

---

[3]Moreover, even though the decedent did not have enough income in any one year to *require* the filing of a return, there is nothing in the record to show that had she filed a return in a later year and elected therein to include in gross income all theretofore accrued interest on the bonds, as she might have done under sec. 454, there might not have been sufficient taxable income to require payment of tax.

[4]There is no suggestion by petitioners that the accrued interest was includable in the decedent's gross income because, by dying, she had "disposed of" the bonds within sec.

Petitioners place heavy reliance upon *Helvering v. Horst*, 311 U.S. 112 (1940), arguing that the interest on the decedent's bonds should be ascribed to her and not to her son, Philip, as her successor. Although the principles of *Horst* are unassailable, they have no application here, where the specific provisions of section 691 of the Code are controlling. Indeed, any possible application of the principles of *Horst* in the case of income in respect of a decedent was specifically taken into account by Congress in 1942 when it enacted the predecessor to section 691. It at that time reversed the prevailing statutory and judicial treatment, under subsection 42(a) of the Revenue Act of 1934 and *Helvering v. Enright*, 312 U.S. 636 (1941), and *Pfaff v. Commissioner*, 312 U.S. 646 (1941), of income accrued by a decedent at his death as income taxable to him in his last return. H. Rept. 2333, 77th Cong., lst Sess. 48, 83-88 (1942), 1942-2 C.B. 372, 411, 435-439;[5] S. Rept. 1631, 77th Cong., 2d Sess. 100-105 (1942), 1942-2 C.B. 504, 579-584. Congress then specifically considered and rejected the tax treatment that is at the very least implicit in the position that petitioners urge on us now. That legislative choice is now embodied in section 691, I.R.C. 1954, which we are bound to follow.

*Decision will be entered under Rule 155.*

---

1.454-1(c)(i), Income Tax Regs. The matter, even if properly before us, is too outlandish for serious consideration. If there were any validity to the point, it would produce a result that would be inconsistent with what has obviously been the practice in the case of thousands of owners of E bonds who have died over a period of many years.

[5]The House Ways and Means Committee explicitly stated (H. Rept. 2333, 77th Cong., lst Sess. 48 (1942), 1942-2 C.B. 372, 411):

"Under the existing statutes, and the decisions of the Supreme Court in the Enright case and the Pfaff case, income accrued to the date of the taxpayer's death must be included in his return for his last income-tax taxable year. * * *

"The proposed amendment would eliminate this hardship by taxing this income to the persons who actually receive it, whether such persons be the executor of the decedent or his heirs. * * *"