Beulah I. CLEVELAND and William Templeton Cleveland and Foster Barker Cleveland, as executors under the will of Frank E. Cleveland

v.

UNITED STATES of America.
Civ. A. No. 54-602.

United States District Court
D. Massachusetts.

Sept. 20, 1955.

Edward C. Park, Boston, Mass., for plaintiffs.

Frederick G. Rita, Washington, D. C., for defendant.

ALDRICH, District Judge.

This is an action to recover a deficiency payment of income tax for the year 1950 brought by the widow and the executors of the late Frank E. Cleveland, hereinafter called taxpayer. The case came up on plaintiffs' motion for summary judgment. At the hearing all the facts were agreed, and the defendant contended that the only issue was a question of interpretation of whether taxpayer had terminated, or merely modified, his membership in a certain partnership.

As of January 1, 1944 taxpayer and five other architects, hereinafter called the partners, entered into a written partnership agreement. The agreement, so far as now material, provided that each partner should share equally in the profits and losses, and should be entitled at the close of each year to an equal division of the profits. Each partner was entitled to an equal fixed monthly so-called salary. A partner could withdraw from the firm, but only upon six months' notice. At the date of such final withdrawal he would receive his then share of the net quick assets, including accounts receivable, but with nothing for work in progress nor for good will. In case of death a partner's estate would receive the payments due on voluntary retirement, plus

15% of the profits for the following year, 10% for the next year, and 5% for the third.

On May 15, 1950, there stood to taxpayer's free capital account on the partnership books profits for prior years, already taxed, of $8,278. In addition, there were 1950 undistributed profits, available only if he then died,[1] of $22,390.[2] On that day the partners entered into what was termed a modification of the partnership agreement. This so-called supplemental agreement provided that whereas taxpayer, because of illness, could not perform his firm duties, he assigned to the other partners "all his right, title and interest in and to each and every partnership asset, however the same may be described * * * presently owned" by the partnership. In return he would be paid $20,000 forthwith, and in lieu of the salary and share of the profits he had heretofore been entitled to, he would receive for the balance of that year $625 a month, and thereafter, so long as he lived, "an amount equal to" one-sixth of the profits of the firm, but not exceeding $7,500 in any one year. Upon his death his estate would receive certain amounts not presently material. It was further provided that in case taxpayer was able to, and did, return to work, and repaid the $20,000, his full original interest in the assets and profits of the partnership would be restored, "but he shall have no interest in, or title to, the assets of the partnership unless he shall have returned the * * * $20,000."

■ Although the word "assets" was rather loosely used, both in the original articles and in the supplemental agreement, I think it fairly included his entire interest in future profits, and that taxpayer, accordingly, parted therewith. In particular the last-quoted clause of the supplemental agreement must have had that meaning. This is in accord with Mass.G.L. (Ter.Ed.) Ch. 108A, § 26. "A partner's interest in the partnership is his share of the profits and surplus". Note also that the so-called supplemental agreement refers throughout to future payments to taxpayer as "an amount equal to" one-sixth of the profits, and not as "one sixth of the profits." This is a difference in kind.

Nonetheless the agreement stated that the partnership would continue as to all parties. Taxpayer died July 30, 1950, after receiving the $20,000, and two monthly payments of $625. Plaintiffs, relying on the above provision indicating the taxpayer's partnership was merely modified and not terminated, reported $12,972 as partnership income—viz., $21,250 less the $8,278 distributable and taxed in the prior year. The government thereafter asserted that the supplemental agreement terminated the partnership as to taxpayer, a contention not devoid of merit,[3] but which I do not find

1. Taxpayer had not given the six months' notice which was a condition precedent to voluntary retirement. This subject is discussed more fully infra.

2. It does not appear if this figure was ascertainable on May 15, or only computed afterwards on the basis of ultimate realization of accounts receivable, etc.

3. It is not altogether easy to see how when one ceases to participate in the firm's business, and parts with all title to the assets, including the right to future profits, in return for fixed payments, even though some of them may be reduced if the business is not sufficiently profitable, one remains a partner simply by saying so. An agreement is to be judged by its substance, not by its form, as is evidenced by the many Massachu-

setts cases holding agreements which purport to create trusts to constitute partnerships. See Flint v. Codman, 247 Mass. 463, 142 N.E. 256, and cases cited. Plaintiffs cite Taft v. Buffum, 14 Pick., Mass., 322, and Russell v. Leland, 12 Allen, Mass., 349. Some language in the earlier case might support their position, but the opinion as a whole tends to refute it. The court there suggested that a man who withdrew all his capital, but continued to invest his personal services and retained his interest in profits might well continue to be a partner. That is not the case at bar. Nor was the executory agreement to return his original interest on certain conditions equivalent to a present partnership. On the other hand, although the parties did not argue it, taxpayer here

necessary to decide. It assessed a deficiency, which plaintiffs paid and now seek to recover.

The government's position was that on May 15, 1950, taxpayer had a capital account of $8,278, plus a distributive share in the 1950 profits of $22,390, and that he gave up both of these sums, or $30,668, in return for the $20,000 payment; the transaction, in other words, resulting in realized taxable income of $22,390, and a capital loss of $10,668. The $1,250 subsequent receipts the government treated as additional income, which was, of course, inconsistent with its position.[4]

■ The fact, if it be the fact, that the net profit could be determined on the partnership books on May 15 at a particular figure did not mean that taxpayer had a distributive share at that time as contended by the government. Unless there is something in the agreement, a partner cannot voluntarily withdraw and call immediately for his share of the then assets. Williams v. Henshaw, 12 Pick., Mass., 378. In the instant case the agreement, furthermore, expressly provided that he could not. In other words, on May 15 he did not have a distributive share, except for the $8,278 already taxed.

■ In the case of partnerships which intend to continue in business apparent profits on the books at any moment may not be a fair indication of the eventual distributive shares at the next regular distribution date, or even of the true profit at the moment. Williams v. Henshaw, supra. Therefore it cannot be positively known, when one partner has been bought out by the others, just what portion of the payment represents income and what capital. It has accordingly been held that regardless of the existence of earnings on the books the entire payment to the withdrawing partner is capital. Meyer v. United States, 7 Cir., 213 F.2d 278. Other courts have held that it is proper to say that the amount received which is equal to the earnings shown on the books is income, and only the balance capital. Le Sage v. Com'r, 5 Cir., 173 F.2d 826; George F. Johnson, 21 T.C. 733. This may be a fair presumption to apply, for tax purposes, with respect to payments actually made. But neither it, nor anything else,[5] can justify treating as additional income something the taxpayer never received, and never had a right to.[6]

If the so-called modification agreement was in fact a continuance of taxpayer's partnership, the original return was admittedly correct, and plaintiffs were chargeable with no deficiency. If in fact it was a sale and termination of his partnership interest, plaintiffs owed no more tax than the amount originally paid, and the result is the same.

Judgment for the plaintiffs for the full amount of the deficiency payment, with interest.

---

did apparently retain some abstract rights to participate in management, if that right did not pass under the word "assets." Cf. Mass. G.L.(Ter.Ed.) Ch. 108A, § 24. Also, it is contended that taxpayer remained liable for losses. However, the supplemental agreement did not specifically so provide, and to say that he remained liable is perhaps a conclusion assuming the point.

4. The government now concedes that on its theory this was a return of capital, and agrees that this portion of the deficiency was erroneously collected.

5. The government contends that Reg. 111, § 29.113(a) (13)–2 covers this matter. As I read it, it expressly leaves it open. The Federal Income Tax, Stanley and Kilcullen (1951) 205.

6. I am disregarding, as did the parties, the obligation of the remaining partners to make further payments of then unascertainable amounts in future years. This was not present receipt to one on a cash basis. Shuster v. Helvering, 2 Cir., 121 F.2d 643; McLaughlin v. Com'r, 7 Cir., 113 F.2d 611.