Percy M. STEWART and Betty H.
STEWART, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 65 Civ. 2952.

United States District Court
S. D. New York.

Jan. 10, 1967.

Wachtell, Lipton, Rosen, Katz & Kern, New York City, for plaintiffs; Herbert M. Wachtell, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for United States of America; Grant B. Hering, Asst. U. S. Atty., of counsel.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

Plaintiff taxpayers, husband and wife, sue to recover the sum of $906.49 assessed by the Internal Revenue Service as an addition to their 1957 income tax by reason of alleged underpayments of the first three instalments of estimated tax for that year. The addition so assessed represented 6% upon the amount by which these instalments were alleged to have been underpaid for the periods of the underpayments. Int.Rev.Code of 1954, § 6654(a), (c).

The taxpayers now move for summary judgment under Rule 56, F.R.Civ.P. Jurisdiction lies under 28 U.S.C. § 1346 (a) (1).

While the amount involved here is relatively small the case raises questions of some importance bearing on the circumstances under which members of a general partnership are required to include partnership earnings in calculating instalments of estimated income tax.

### I.

The taxpayers rely on the following facts:

During 1957 Percy Stewart, the husband taxpayer, was a general partner in the investment banking and underwriting firm of Kuhn, Loeb & Co. (Kuhn Loeb). His income from the partnership in that year totalled $124,905.08. Of that sum $35,000 was guaranteed salary under the partnership agreement, received by him in monthly instalments during the course of the calendar year. The balance represented Mr. Stewart's share of the partnership's net profits, which he claims were not ascertained or distributed under the partnership agreement until December 31, 1957.

For the year 1957, Mr. and Mrs. Stewart, cash basis taxpayers, filed a joint

declaration of estimated income tax and a joint tax return. Their 1957 taxable year, like that of the Kuhn Loeb partnership, was the calendar year. Their declaration of estimated tax, filed on April 15, 1957, see Int.Rev.Code of 1954, § 6015(a), estimated a tax liability of $5,207.36 for the twelve month period. Accordingly they paid one-fourth of this amount, or $1,301.84, for each of the first three quarterly instalments due April 15, June 15 and September 15, 1957, respectively. Insofar as receipts from Kuhn Loeb were concerned, the taxpayers' calculations of their instalment payments were based solely upon the expected guaranteed salary of $35,000, and did not include any part of Mr. Stewart's share of accruing, but undistributed Kuhn Loeb profits. On January 15, 1958, after Mr. Stewart's share of the Kuhn Loeb net profits had been distributed, taxpayers filed an amended declaration of estimated tax showing an actual tax liability of $59,207.36 for the year 1957. See Int.Rev.Code of 1954, § 6015 (e). They made a final payment of $54,000 on that date. Their income tax for 1957 in the amount of $59,598.95 [1] has now been fully paid and is not in dispute.

On June 26, 1961, plaintiffs were informed by the Revenue Service that they had underpaid the first three 1957 instalments, and the Service imposed the addition to tax of $906.49 here in dispute. The alleged underpayments resulted from the failure of the taxpayers to include Mr. Stewart's share of the undistributed earnings of the partnership for the months preceding the due date of each instalment in calculating the amount of estimated tax payable.

Plaintiffs paid the $906.49 under protest on December 15, 1961, and on May 6, 1963, filed with the Revenue Service a claim for refund which was subsequently disallowed on June 22, 1964. This action followed.

The taxpayers assert that the facts as stated entitle them to summary judgment in their favor. The Government contends that summary judgment should be denied on either one of two grounds. It urges first, that on the facts as stated the addition to tax was properly assessed as a matter of law. Second, it is urged that if this is not so there are material questions of fact as to the interpretation and operation of the Kuhn Loeb partnership agreement and practices followed thereunder which require trial.

## II.

Section 6654 of the Internal Revenue Code, as it applies to the 1957 taxable years,[2] provides generally for an addition to tax of 6% per annum upon any underpayment of estimated tax by a taxpayer who pays his instalments in an amount that proves to be less than 70% of his ultimate actual income tax for the year.[3] Section 6654(d), however, offers four different escape routes for the taxpayer who might otherwise be subjected to the addition to tax imposed in the event of underpayment. The first two, not material here, in substance permit a taxpayer to make his estimated payments on the basis of the facts stated on his return for the preceding taxable year.[4] The last two exceptions generally authorize a taxpayer to gear his instalment payments—according to the alternative formulae in subsections 6654(d) (1) (C) and (d) (2)—to his "taxable income" or "actual taxable income" for the

---

1. In addition to the four payments of estimated tax, plaintiffs made subsequent payments of $172.84 on April 15, 1958 and $1,620.59 plus interest of $320.28 on July 31, 1961. These latter payments were apparently occasioned by errors in computation.

2. Section 6654 was amended in minor respects and was otherwise reorganized by Pub.L. No. 89–368, March 15, 1966, 80 Stat. 37. The references in this opinion, however, will be to the law in effect during the taxable year of 1957.

3. Int.Rev.Code of 1954, § 6654(a), (b), (c).

4. Int.Rev.Code of 1954, § 6654(d) (1) (A), (B).

"months in the taxable year ending before the month in which the installment is required to be paid." [5] It is these two exceptions upon which the taxpayers here rely though they do not specify which.

The issue thus presented is whether the touchstone terms "taxable income" and "actual taxable income" in these subsections include not only the actual payments of Mr. Stewart's guaranteed Kuhn Loeb salary but also the undistributed share of the partnership income attributable to the months in the taxable year preceding taxpayers' instalment dates. The parties agree—as § 702 of the Internal Revenue Code of 1954 explicitly states—that a partner's "taxable income" or "actual taxable income" includes his "distributive share" of the partnership earnings, as well as his guaranteed salary. See also Treas.Reg. § 1.6654–2(d). The ultimate question is limited to whether "distributive share" as it relates to the obligation of these taxpayers to make instalment payments of estimated tax

includes Mr. Stewart's share of the accumulated, but undistributed, earnings of Kuhn Loeb for the period covered by the instalment.

The taxpayers' argument takes this course. Relying upon cases such as Girard Trust Co. v. United States, 182 F.2d 921 (3 Cir. 1950), Shunk v. Commissioner of Internal Revenue, 173 F.2d 747 (6 Cir. 1949), and Cleveland v. United States, 134 F.Supp. 363 (D.Mass.1955), they contend that a partner becomes liable for income tax only when his share of the profits has been ascertained at the end of the accounting period provided by the partnership agreement. See also 26 U.S.C. § 706(a). They say that under the Kuhn Loeb partnership agreement Mr. Stewart's share of the partnership profits for the calendar year 1957 [6] was not to be and was not ascertained and distributed until December 31, and that therefore he was not entitled to receive such share until that date. For this reason taxpayers claim they were not required to include in their calculations

5. Section 6654(d) reads in pertinent part:
"Notwithstanding the provisions of the preceding subsections, the addition to the tax with respect to any underpayment of any installment shall not be imposed if the total amount of all payments of estimated tax made on or before the last date prescribed for the payment of such installment equals or exceeds whichever of the following is the lesser—
(1) The amount which would have been required to be paid on or before such date if the estimated tax were whichever of the following is the lesser—
(A) * * *
(B) * * *
(C) An amount equal to 70 percent (66–2/3 percent in the case of individuals * * *, relating to income from farming or fishing) of the tax for the taxable year computed by placing on an annualized basis the taxable income for the months in the taxable year ending before the month in which the installment is required to be paid. For purposes of this subparagraph, the taxable income shall be placed on an annualized basis by—
(i) multiplying by 12 (or, in the case of a taxable year of less than 12 months, the number of months in the taxable year) the taxable income (computed without deduction of personal exemptions) for the months in the tax-

able year ending before the month in which the installment is required to be paid,
(ii) dividing the resulting amount by the number of months in the taxable year ending before the month in which such installment date falls, and
(iii) deducting from such amount the deductions for personal exemptions allowable for the taxable year (such personal exemptions being determined as of the last date prescribed for payment of the installment) ; or
(2) An amount equal to 90 percent of the tax computed, at the rates applicable to the taxable year, on the basis of the actual taxable income for the months in the taxable year ending before the month in which the installment is required to be paid."

6. Under the agreement Mr. Stewart was entitled to 4.348% of the annual partnership net profit "up to the amount of $230,000;" he was entitled to 5.833% of the net profit "in excess of $230,000 and up to an additional $90,000." And he was to receive 11.5% of any yearly partnership net profit in excess of $320,000. Mr. Stewart was also obliged under the partnership agreement to share any net loss which might have been incurred in the operation of the business.

of the estimated tax due on April 15, September 15 and November 15 an undistributed amount which Mr. Stewart was not entitled to receive until the end of the year and which was undetermined and undeterminable until that date. To hold otherwise, as the argument runs, would transform the reasonable "pay as you go" policy embodied in the estimated tax provisions of the Internal Revenue Code into an unreasonable "pay before you go" imposition which would inflict undue hardship on the taxpayer.

## III.

Taxpayers' argument, while plausible on its face, runs counter to the Code and to the legislative history of Section 6654 (d), and is directly contrary to the consistent administrative practice under that provision.

■ In the first place, contrary to the taxpayers' view, the term "distributive share," [7] insofar as it casts light upon the meaning of "taxable income" and "actual taxable income" in subsections 6654(d) (1) (C) and (d) (2), does not make a "right to * * * *distribution* of the income * * * the acid test of taxability." [8] Rather, "the word 'distributive' is used in the sense of 'proportionate.'" Earle v. Commissioner of Internal Revenue, 38 F.2d 965, 967 (1 Cir. 1930). "The tax is thus imposed upon the partner's proportionate share of the net income of the partnership, and the fact that it may not be currently distributable, whether by agreement of the parties or by operation of law, is not material." Heiner v. Mellon, 304 U.S. 271, 281, 58 S.Ct. 926, 931, 82 L.Ed. 1337 (1938) (Brandeis, J.); see Treas. Reg. § 1.702–1. Thus the phrase "distributive share" as used in the law of partnership income taxation means "only that gains attributable to the partner's interest in the firm were *earned*." Helvering v. Estate of Enright, 312 U.S. 636, 642, 61 S.Ct. 777, 781, 85 L.Ed. 1093

(1941) (emphasis in original). It is the theory of the estimated tax that payments should be made upon these accrued earnings, whether paid or unpaid, so as to insure collection of taxes on a current basis. Erwin v. Cranquist, 253 F.2d 26, 27 (9 Cir.) (per curiam), cert. den., 356 U.S. 960, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958); Harris, Individual Estimated Tax Payments, in New York University, Sixteenth Annual Institute on Federal Taxation 537 (1958).

■ Therefore the operative terms "taxable income" and "actual taxable income" in subsections 6654(d) (1) (C) and (d) (2), which include a partner's distributive share of the partnership earnings for the months preceding the instalment, do not permit the omission of the share from calculation of the estimated tax merely because it is not distributed and realized. The taxpayer is required to include in his computations his proportionate, i. e., distributive, share of the partnership earnings up to that point whether realized or not.

■ The circumstances under which estimated tax is to be paid on partnership income accrued but not received during months prior to the instalment due date are not materially different from similar circumstances in which partners may find themselves at the end of the taxable year. Yet partners cannot escape taxation on partnership earnings accrued at the end of the partnership year simply because they remain undistributed by agreement or otherwise. See Heiner v. Mellon, supra, 304 U.S. at 281, 58 S.Ct. 926; Bourne v. Commissioner of Internal Revenue, 62 F.2d 648 (4 Cir.), cert. den., 290 U.S. 650, 54 S.Ct. 67, 78 L.Ed. 1048 (1933); Johnson v. Commissioner, 21 T.C. 733 (1954). There too, each partner must pay the tax on his partnership earnings though the amount of the earnings has not been paid over to him. Hardship in individual

---

7. Int.Rev.Code of 1954, § 702; Treas.Reg. § 1.6654–2(d) (2).

8. Brief for Plaintiffs, p. 11 (emphasis in original). Treas.Reg. § 1.702–1 requires

each partner "to take into account separately in his return his distributive share, whether or not distributed, of each class or item of partnership income, gain, loss, deduction, or credit * * * *."

cases there may be but "[i]t is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals." Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365, 51 S.Ct. 150, 152, 75 L.Ed. 383 (1931). "Circumstances wholly fortuitous may determine the year [or month] in which income, whenever earned, is taxable. * * *." Guaranty Trust Co. v. Commissioner of Internal Revenue, 303 U.S. 493, 498, 58 S.Ct. 673, 676, 82 L.Ed. 975 (1938).

■ Taxpayers' basic premise here is that no liability to pay estimated tax of partnership income can arise unless the partner has a right to receive such income at the time when the payment of the estimated tax instalment is due. The taxpayers seek to derive this premise from such cases as *Girard Trust*,[9] and *Shunk*, which concern the year in which income of a partner should be taxed as affected by the taxable year of the partnership, and from 26 U.S.C. § 706(a) dealing with that subject. Section 706 (a) provides that the inclusion of items of partnership income in the "taxable income of a partner for a taxable year" shall be based on the "taxable year of the partnership ending within or with the taxable year of the partner."

■ The taxpayers urge that these Section 706(a) requirements be read into subsections 6654(d) (1) (C) and (d) (2) so as to exclude any prepayment by way of estimated tax on partnership income until the conclusion of the partnership taxable year as fixed by the partnership agreement.

The difficulty with the taxpayers' position is that § 706(a) and § 6654(d) (1) (C) and (d) (2) have different provisions and deal with different concepts. Unlike § 706(a), which speaks in terms of "taxable income of a partner *for a taxable year*," the subsections with which we are concerned here deal with the "taxable income [of the partner] *for the months in the taxable year ending before the month in which the installment is required to be paid*." In essence, subsections 6654(d) (1) (C) and (d) (2) prescribe "short" taxable years on which the taxpayer must base his estimated payments. E. g., Hill, Problems in Declaring and Paying Estimated Taxes, in New York University, Fourteenth Annual Institute on Federal Taxation 1557, 1565 (1956). The accrued earnings of the partnership for the months specified by these subsections are certainly taxable income for purposes of a partner's estimated payments regardless of when the taxable year of the partnership ends. If the taxpayer elects to proceed under these subsections in preference to the other alternatives for payment of estimated tax open to him, he is bound by their provisions.

■ Congress in enacting § 6654 required current quarterly payments of estimated tax to accelerate collections but has permitted alternative bases for calculating the payments due. In so doing it has placed all taxpayers, including partners, on a relatively equal footing. I see no reason to suppose that it intended to give preferred treatment to partners who choose by agreement between themselves and for reasons of their own, to defer distribution of partnership earnings to a date subsequent to the time when the estimated tax payments fall due. Partners cannot by agreement escape payment of estimated tax on partnership income which accrues though it is not distributed or distributable during the "short" taxable years prescribed by these subsections.

■ Such a requirement is by no means unreasonable. Whether a partnership agreement directs that distribution be made quarterly, at year end, or otherwise is at the option of the partners. If they choose for reasons of their own to defer distribution to the end of the year for the advantage of the partnership,

9. It should be noted that *Girard Trust*, at least in its narrowest holding, has not been followed in this circuit. See Commissioner v. Waldman's Estate, 196 F.2d 83 (2 Cir. 1952).

that cannot and should not override the estimated tax provisions of the Code which require calculation of the estimated tax on the basis of the *partnership* earnings during the period covered by the instalment.

Moreover, the alternative formulae for calculating estimated tax provided in § 6654(d) (1) (A) and (B) were also open to these taxpayers. They themselves elected to follow the formulae provided in § 6654(d) (1) (C) and (d) (2) (whichever they did follow) and they are strictly bound by these formulae.[10] See United States v. Steck, 295 F.2d 682 (1t Cir. 1961); Estate of Barney Rubin, 33 T.C. 1071 (1960); Treas.Reg. § 1.6654–1(a); cf. Volney L. Pinkerton, 28 T.C. 910 (1957); John Adrian Cooper, 25 T.C. 894 (1956); Howard M. Fischer, 25 T.C 102 (1955). Compare Int.Rev.Code of 1954, § 6652.

Finally, I am not persuaded by the argument that the calculation of each partner's share of partnership earnings for the various instalment periods presents insurmountable difficulties. No doubt the partnership has reasonably accurate figures available as to its earnings on a quarterly basis and the percentage shares of the partners are fixed by the agreement. It seems unlikely that Mr. Stewart was taken aback at the end of the year when he received the substantial additional sums as his share of the Kuhn Loeb net profits.

It is quite true that as the tax year progresses the prospects as to the amount of partnership earnings for the taxable year as a whole may change up or down, depending on normal or abnormal business fluctuations. But the taxpayer is not bound in any financial straight-jacket for he is permitted under the Act and the Regulations to make appropriate adjustments of his estimated tax payments for successive quarterly periods so as to take such changes into account. Int.Rev.

Code of 1954, § 6015(e); Treas.Reg. § 1.6015(e)–1.

Prepayments are to be made only on the basis of a reasonable expectation of earned income, Int.Rev.Code of 1954, § 6015, and the estimated tax is not intended to be a precise figure but only within a 70% range of the actual tax shown to be due. If the calculation of the estimated tax should, as it probably will, require prediction by the taxpayer as to what may happen in the remainder of the taxable year, there is nothing irrational about this simply "because it implies the power of prophecy on the part of a taxpayer." Commissioner of Internal Revenue v. Acker, P-H Tax Ct. Mem. ¶ 57017 (1957), aff'd, 258 F.2d 568, 575 (6 Cir. 1958), aff'd, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959).

On the facts on which taxpayers rely here I hold that the terms "taxable income" and "actual taxable income" in subsections 6654(d) (1) (C) and (d) (2) respectively, embrace a partner's share of the partnership earnings attributable to the months in the partnership's taxable year preceding the estimated tax instalment date, whether or not realized or realizable by him.

### IV.

This interpretation is fully supported by the legislative history of § 6654, as well as consistent administrative practice.

It is plain that Congress can direct that a cash basis taxpayer account on an accrual basis for specified items of income. See, e. g., Helvering v. Estate of Enright, 312 U.S. 636, 644–645, 61 S.Ct. 777 (1941); Floyd v. Scofield, 193 F.2d 594 (5 Cir. 1952); Jud Plumbing & Heating, Inc. v. Commissioner of Internal Revenue, 153 F.2d 681 (5 Cir. 1946); Carter v. Commissioner, 9 T.C. 364 (1947); cf. American Automobile Ass'n v. United States, 367 U.S. 687, 81

10. The "safest [escape route] is undoubtedly the provision for basing the taxable year's declaration of estimated tax liability on the tax shown on the return for the preceding year." 8A Mertens, Federal Income Taxation § 47A.29a, at 163 (1964).

S.Ct. 1727, 6 L.Ed.2d 1109 (1961). This is precisely what Congress intended to do when it formulated the two exceptions to § 6654 with which we are concerned here. The House-approved bill which reached the Senate did not contain § 6654(d) (2). That provision was inserted by the Senate Committee on Finance which spoke directly to the partnership problem:

> "For purposes of applying this section in any case in which the taxable year of a partnership ends with or within the taxable year of a partner, the facts as to the partnership income for the months of the partnership year prior to the partner's installment date and as to the partner's distributive share of such income shall be taken into account in determining the partner's income for the months before such installment date." 1954 U.S.Code, Congress. & Admins.News, Vol. 3, p. 5242.

The proposals advanced by the Senate became law. Conference Report, in 1954 U.S.Code, Congress. & Admins.News, Vol. 3, p. 5342.

The available legislative history thus shows unequivocally that a partner's distributive (i. e., proportionate) share of the accumulated partnership income "shall be taken into account in determining the partner's income" for the months preceding the instalment date. Commentators who have considered the provisions agree that in order for a partner to qualify under subsections 6654(d) (1) (C) and (d) (2) he must include his share of the accruing partnership income to the appropriate date, even though it remains undistributed.[11]

Interpretation by the Treasury has been similarly faithful to Congress' express legislative purpose. In March of 1955 the Internal Revenue Service issued what became Rev.Rul. 55–348, 1955–1 Cum.Bull. 132.[12] That ruling, as applied

11. Harris, Individual Estimated Tax Payments, in New York University, Sixteenth Annual Institute on Federal Taxation 537, 549–50 (1958); Hill, Problems in Declaring and Paying Estimated Taxes, in New York University, Fourteenth Annual Institute on Federal Taxation 1557, 1569–70 (1956); Raum, Procedural and Administrative Provisions of the Internal Revenue Code of 1954—Statute of Limitations, Filing Dates and Requirements, etc., in Fourth Annual Tulane Tax Institute 95, 113 (1955); Stanley, Penalties for Under-Estimating Personal Income Taxes, in Eleventh Annual Southern California Tax Institute 437, 451–52 (1958); Wetterhall, "How to Avoid Penalties in Estimating Taxes," 101 J. Accounting 34, 37 (April, 1956).

12. The ruling, which was promulgated in question and answer form, is quoted in pertinent part:

"PROBLEMS AFFECTING MEMBERS OF PARTNERSHIPS

"12. Q. I am a member of a partnership in which profits and losses are shared according to a ratio prescribed in the partnership agreement. Both the partnership return and my return are made on the basis of a calendar year. What amount, if any, of the income of the partnership should I take into account for the purpose of filing a declaration of estimated tax on April 15?

A. You should take into account your distributive share of the partnership's estimated income for 1955. As in the case of all other individual taxpayers, you are entitled to use any method of computation described in the answer to question 2. However, if you use the third or fourth method described in the answer to that question, you must take into account in determining the amount of your taxable income for the months preceding the month in which the installment date falls your distributive share of the partnership income for such months, whether or not actually distributed to you in those months.

"13. Q. Assume the same set of circumstances as in the preceding question, except that I receive guaranteed payments under the partnership agreement. What then do I take into account for the purpose of determining the amount of my estimated tax?

A. Guaranteed payments, to the extent determined without regard to the income of the partnership, are included in gross income of the partner. Accordingly, you should take into account the total amount of guaranteed payments to which you are entitled plus any other amount of the partnership earnings to which you are also entitled.

"14. Q. I am a partner in a law firm and I receive a guaranteed payment each month determined without regard to the

here, is directly opposed to the taxpayers' position; indeed, ours is an easier case since Mr. Stewart had a fixed right to a specified percentage of the net profit on December 31, 1957, whereas in the example given in the Ruling the end-of-the-year "allocation is to be made by the senior partner" according to his unpredictable predilections.

The administrative interpretation in Rev.Rul. 55–348 was reaffirmed by the adoption of Treas.Reg. § 1.6654–2(d) on November 13, 1957. The Regulation was in full accord with the previous Ruling, as well as the language and legislative history of § 6654. Compare Commissioner v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948). With reference to the applicability of the exceptions with which we are concerned, it provides:

"There shall be taken into account—

(a) The partner's distributive share of partnership items set forth under section 702,

(b) The amount of any guaranteed payments under section 707(c),

\* \* \*.

\* \* \* \* \* \*

In determining a partner's taxable income for the months in his taxable year which precede the month in which the installment date falls, the partner shall take into account items set forth in section 702 for any partnership taxable year ending with or within his taxable year to the extent that such items are attributable to months in such partnership taxable year which precede the month in which the installment date falls \* \* \*."

As mentioned earlier, "distributive share" in this context means "proportionate share." The term does not require a right to receive income distributed at the end of a partnership year as a prerequisite to the payment of estimated tax, as an example given in the Regulations clearly shows.[13] While the

income of the partnership. Both the partnership return and my return are made on a calendar-year basis. *The partnership agreement provides that any earnings in excess of guaranteed payments shall be allocated to the various partners during the last month of the year. It further provides that the allocation is to be made by the senior partner after taking into consideration each partner's work during the year.* How can I use the fourth method discussed in the answer to question 2 to determine the amount of my estimated tax to be declared and paid by April 15?

A. In order for any taxpayer to use this method with certainty, he must establish his actual taxable income for the months in his taxable year preceding the month in which the installment date falls. *Your actual taxable income will include both the amount of guaranteed payments and your distributive share of the partnership earnings for the months that precede the month in which the installment date falls, whether or not your share was actually distributed to you in those months.* If, prior to the installment date, the partnership in good faith furnishes the partners with information enabling them to determine their distributive shares of partnership earnings for such months, you will be able to

use the fourth method with certainty by taking into account your distributive share so determined of the actual partnership earnings for such months and all your other income for those months, *even though the partnership may later reconsider and fix a different percentage allocation of partnership earnings for the year.* If, prior to the installment date, the partnership does not furnish you with information that will enable you to determine your distributive share of the partnership earnings for such months, you will be unable to use the fourth method with certainty that your installment payment will be in an amount sufficient to relieve you from a possible addition to the tax for underpayment. Under such circumstances, you may find it desirable to use the first or second method discussed in the answer to question 2." (Emphasis added.)

13. Example (2) reads as follows:
"Assume that the taxable year of the partnership of which A, a calendar year taxpayer, is a member ends on June 30th. A must take into account in the determination of his taxable income for the installment due on April 15, 1955, his distributive share of partnership items described in section 702 for the period July 1, 1954, through March 31, 1955; for the installment due on June 15, 1955, he must

Regulation was not promulgated until after the taxpayers had paid the three instalments in question here, a consistent "construction of a doubtful or ambiguous statute by officials charged with its administration" should not be "judicially disturbed except for reasons of weight". McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 492, 51 S.Ct. 510, 512, 75 L.Ed. 1183 (1931) (Stone, J.). No such reasons have been presented here.

Finally, the subsections now before the court were re-enacted with minor modifications in March of last year. Pub.L. No. 89–368, March 15, 1966, 80 Stat. 37. In light of twelve years of administrative practice such action by Congress "is significant as indicating satisfaction with the interpretation consistently given the statute by the [regulation and revenue ruling] here at issue and in demonstrating its prior intent." Cammarano v. United States, 358 U.S. 498, 510, 79 S.Ct. 524, 532, 3 L.Ed.2d 462 (1959); see McFeely v. Commissioner of Internal Revenue, 296 U.S. 102, 56 S.Ct. 54, 80 L.Ed. 83 (1935); United States v. Dakota-Montana Oil Co., 288 U.S. 459, 53 S.Ct. 435, 77 L.Ed. 893 (1933). That administrative interpretation, as we have seen, forecloses taxpayers' claims here.

*Conclusion*

On the facts relied on by the taxpayers the addition to their 1957 income tax for substantial under-estimate of prepayments of estimated tax is fully justified. The motion for summary judgment is denied on that ground.

This makes it unnecessary to discuss the Government's alternative ground of opposition to the motion to the effect that there are material questions of fact which require a trial.

It is so ordered.

take into account such amounts for the period July 1, 1954, through May 31, 1955; and for the installments due on September 15, 1955 he must take into ac-

count such amounts for the entire partnership taxable year of July 1, 1954, through June 30, 1955 (the date on which the partnership taxable year ends)."