Herbert Payson, Jr. and Eileen Payson, Husband and Wife v. Commissioner. Benjamin D. Holt and Anne Carroll Holt, Husband and Wife v. Commissioner. Alida Payson Snow v. Commissioner.
Payson v. Commissioner
Docket Nos. 56060, 56061, 56062.
United States Tax Court
T.C. Memo 1959-158; 1959 Tax Ct. Memo LEXIS 90; 18 T.C.M. (CCH) 686; T.C.M. (RIA) 59158; August 13, 1959
Carl F. Bauersfeld, Esq., for the petitioners. Chester M. Howe, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This consolidated proceeding involves deficiencies in income tax for 1950 determined against petitioners as follows: Docket
Petitioner
No.
Deficiency
Herbert Payson, Jr., and
Eileen Payson
56060
$1,736.48
Benjamin D. Holt and Anne
Carroil Holt
56061
2,637.80
Alida Payson Snow
56062
3,065.06 The sole issue presented is whether a corporation's payments on its debentures to beneficiaries of an estate, petitioners herein, constituted interest *91 income in respect of a decedent or were a return of capital, such payments having been designated by the corporation as interest. Findings of Fact The stipulated facts are found. Herbert Payson, Jr., and Eileen Payson, husband and wife, Benjamin D. Holt and Anne Carroll Holt, husband and wife, and Alida Payson Snow, all residing in Portland, Maine, filed their 1950 returns on the cash method of accounting with the then collector of internal revenue for the district of Maine. On January 25, 1929, the four trustees under the will of John Marshall Brown, deceased, organized the John Marshall Brown Company, hereafter called the corporation, to own, operate and gradually liquidate the real estate owned by the John Marshall Brown estate. On the same date, the corporation acquired certain real estate from the trustees and issued in exchange four 6 per cent debentures, due January 25, 1939, in the amount of $250,000 each, and 4,000 shares of stock in the total amount of $4.00. Thereupon the trustees transferred to Sally Carroll Payson, one of the beneficiaries under the trust and hereafter called decedent, one of the $250,000 debentures and 999 shares of stock. Each trustee received *92 one share of stock. The debentures provided in part: "Ten years after [January 25, 1929, the corporation] * * * promises to pay * * * $250,000 with interest thereon at the rate of six per cent (6%) per annum, payable semi-annually, with interest on overdue interest at the same rate, both principal and interest being payable at The First National Bank of Portland, Maine, without deduction of normal income tax not exceeding two per cent (2%) per annum. "This debenture is * * * junior in payment, both principal and interest, to any borrowings of the corporation deemed necessary by its Directors in the exercise of their discretion for carrying on the business of the corporation * * *; and the holder hereof covenants that this Debenture shall not be enforceable against the property of the corporation in the absence of fraud in conducting its affairs, until its Board of Directors shall declare this Debenture enforceable for the collection of either interest or principal. The corporation retains the rights and the holder hereof takes this Debenture subject to such right, to make payments upon the principal sum hereof on any interest day at the discretion of the Board of Directors of *93 the corporation, provided only that such payments shall be made pro rata upon the Debentures then outstanding." Decedent died on June 14, 1948. At this time her debenture was in default as to principal and interest in the respective amounts of $231,000 and $280,816.59. This debenture was divided into 5, one of which was distributed to each of 5 beneficiaries of her estate, 3 of whom were the petitioners herein, Herbert Payson, Jr., Anne Carroll Holt and Alida Payson Snow who will hereafter be called petitioners. Each petitioner acquired a debenture with a face value of $50,000. Decedent's debenture and capital stock interest in the corporation were reported in her Federal estate tax return as follows: Item
No.
Item
Value
27
999 shares no par value com-
mon stock
None
51
1 - $250,000 10-year 6% de-
benture - unpaid principal
None
Interest in default on above
debenture of $280,816.59
$95,783.56 Respondent examined decedent's Federal estate tax return and increased the valuation of several assets. Item No. 51 was increased as follows: Item
Value Claimed
Corrected
No.
Description of Item
on Return
Value
51
$250,000 John Marshall Brown Co. 10-year 6% debenture 1/25/39
$95,783.56
$113,767.24
*94 As a result of respondent's examination decedent's estate paid a deficiency in estate tax and interest in the amounts of $14,607.01 and $1,394.97, respectively. In 1950 the corporation distributed $120,944.33 to the holders of its outstanding debentures as follows: Amount
Face Amount of
Received
Debentures Held
Petitioner Herbert Payson, Jr.
$ 13,553.00
$ 50,000.00
Petitioner Anne Carroll Holt
13,553.00
50,000.00
Petitioner Alida Payson Snow
13,553.00
50,000.00
John B. Payson
13,553.00
50,000.00
First National Bank, Trustee
13,553.00
50,000.00
John F. Dana and Harold L. Berry, Trustees
17,065.00
250,000.00
Mary D. Morris
11,114.33
125,000.00
Violetta L. Berry
19,000.00
250,000.00
Hasket Derby
6,000.00
125,000.00
Total
$120,944.33
$1,000,000.00
The corporation treated this distribution as an interest payment in its 1950 records and return. It also notified each petitioner that this distribution was an interest payment. Petitioner Herbert Payson, Jr., acknowledged receipt of $10,941.47 as interest. From 1930 through 1957 the corporation's books indicated the balance due on principal of debentures, payments on principal, interest *95 payments, net income (or loss) before interest payments and credit (or debit) balance of surplus as follows (in even dollars): Net Income
Credit
Balance of
(or Loss)
(or Debit)
Debenture
Payments on
Interest
Before Interest
Balance
Year
Principal
Principal
Payments
Payments
of Surplus
1930
$1,000,000
[12,710)
[ 12,710)
1931
960,000
$40,000
$123,505
43,497
( 92,717)
1932
924,000
36,000
79,180
(89,737)
(261,634)
1933
924,000
( 4,879)
(266,514)
1934
924,000
(11,350)
(277,864)
1935
924,000
( 6,298)
(284,163)
1936
924,000
( 6,988)
(295,104)
1937
924,000
34,000
33,233
(295,870)
1938
924,000
24,000
( 199)
(320,070)
1939
924,000
30,000
2,209
(347,861)
1940
924,000
63,840
(52,764)
(464,465)
1941
924,000
18,000
( 4,053)
(486,518)
1942
924,000
( 6,093)
(492,612)
1943
924,000
( 5,711)
(498,323)
1944
924,000
971
(497,351)
1945
924,000
1,448
(495,902)
1946
924,000
24,000
17,264
(502,638)
1947
924,000
27,000
19,142
(510,496)
1948
924,000
42,000
15,320
(537,185)
1949
924,000
21,175
13,175
(545,185)
1950
924,000
120,944
23,545
(642,583)
1951
924,000
50,218
10,236
(682,565)
1952
924,000
53,722
50,145
(686,217)
1953
864,000
60,000
( 67)
(686,284)
1954
864,000
( 515)
(686,799)
1955
804,000
60,000
3,703
(683,096)
1956
774,000
30,000
( 2,940)
(686,037)
1957
774,000
( 1,577)
(687,615)
*96 From 1930 through 1948, inclusive, the corporation liquidated and reduced its real estate from $1,005,413.47 to $203,631.61. From 1948 through 1957, inclusive, it further liquidated and reduced its real estate from $203,631.61 to $70,477.08. In the taxable year 1950 the corporation did not have sufficient assets to pay the outstanding principal of the debentures. Each petitioner considered $13,553 as a return of capital and did not report it as interest income. Respondent determined that each distribution was interest income and allowed a deduction to each petitioner of $4,228.54 for the proportionate amount of estate tax attributable to that portion included in the estate tax return. The receipt of the $13,553 by each of the petitioners constituted interest income in respect of a decedent. Opinion Under section 126, I.R.C. 1939, cf. section 691, I.R.C. 1954, the recipient of an income item acquired from a decedent is required to place himself in the same position as the decedent would have been had he lived. [1] The issue here can accordingly be reduced to the question whether decedent would have been taxable on these payments as ordinary income. *97 The bonds on which the payments here were made were acquired by decedent in 1929 before there was any default in either principal or interest. Petitioners' reliance on the acquisition of defaulted bonds, purchased "flat" or otherwise, is accordingly misplaced. Cf. Erskine Hewitt, 30 B.T.A. 962. The real question here, as it would be if decedent were the taxpayer, is whether the payments in question were received on account of principal or interest. If the latter, they would have been taxable to decedent as ordinary income and so must retain the same character when received by petitioners. It may well be that the corporate debtor could have designated the payments in controversy as in reduction of principal, and that the decedent's estate tax return could correspondingly have treated the defaulted values as attributable to principal exclusively. But petitioners take no exception to the statement that the debtor can designate the application of any payment, see Gordon v. Hobart, 10 Fed. Cas. 787, No. 5,608 (1842), and there is no doubt that these amounts were characterized by the debtor as interest and that petitioners were so notified. In fact, the debtor *98 was controlled by petitioners and those similarly situated, and undeniably received some, perhaps insignificant, benefit by that procedure. It follows that though the parties might have been better advised to have dealt with the situation as though the defaulted principal were being reduced, and as though the estate tax valuation should have been attributed to principal rather than interest, [2] we must deal with the transaction as it actually occurred rather than as it could have been handled. Anna M. Harkness, 1 B.T.A. 127. This requires the conclusion that petitioners received interest which would have been taxable as such to decedent had she lived, and hence must be viewed as having themselves received ordinary income. See Estate of Edgar V. O'Daniel, 10 T.C. 631, affd. (C.A. 2) 173 Fed. (2d) 966. *99 A Memorandum Opinion of the Tax Court relied upon by petitioners and reaching a contrary result was decided prior to the adoption of section 126 and hence requires no further discussion. Decisions will be entered for the respondent. Footnotes
1. "SEC. 126. INCOME IN RESPECT OF DECEDENTS. "(a) Inclusion in Gross Income. - "(1) General Rule. - The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of: "* * * "(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right. "* * * "(3) Character of Income Determined by Reference to Decedent. - The right, described in paragraph (1), to receive an amount shall be treated, in the hands of * * * any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, as if it had been acquired by * * * such person in the transaction by which the decedent acquired such right; and the amount includible in gross income under paragraph (1) * * * shall be considered in the hands of * * * such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount."↩
2. Petitioners make the statement that: "In addition, it is pointed out that where an insolvent debtor or bankrupt does not have sufficient assets to pay his debts in full, equity and justice require that all payments are to be applied on the principal of the debts." but cite no authority for the proposition and we have found none where the debtor itself has made the application.↩