Argued and submitted February 10, reversed and remanded May 18, 1982

STUCHELL et al,
*Appellants,*
*v.*
DEPARTMENT OF REVENUE,
*Respondents.*

(No. 1370, SC 27846)

644 P2d 1387

Bryant R. Dunn and Kent Whiteley, Graham & Dunn, Seattle, Washington, argued the cause for appellants. With them on the briefs were Ridgway K. Foley, Jr., and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Walter J. Apley, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief was Dave Frohnmayer, Attorney General, Salem.

Before Denecke, Chief Justice, and Lent, Linde, Peterson, Tanzer, and Roberts, Justices.

LENT, J.

## LENT, J.

The issue is whether certain money received by the plaintiffs resulting from the cutting of timber under the terms of a certain contract constituted income in respect of a decedent (hereinafter "IRD"). We hold that it did not.[1]

The money in question is sums received by plaintiffs for timber cut and paid for after the deaths of plaintiffs' decedents, who were owners of certain fractional shares of the timber at the time of making the contract. Plaintiffs contend that those sums are not IRD under the personal income tax laws of this state because the sums are derived from the cutting of timber that was acquired by plaintiffs as the result of deaths of their respective decedents. Defendant contends that the money is IRD because the contract created a perpetual right in the buyer to cut and remove timber resulting in an equitable conversion that left in the owners/sellers of the timber bare legal title to the timber as security to ensure that they would collect the annual proceeds of timber cut under the contract.

The parties are agreed that for the purposes of this case state income tax law incorporates those provisions of the federal Internal Revenue Code of 1954, to which we refer in this opinion. The section of primary concern is § 691, which provides in part:

"(a) Inclusion in gross income.

"(1) General rule. The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period * * * shall be included in the gross income, for the taxable year when received, of:

"(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

---

[1] The consequence of our decision is to fix the cost basis of the timber. Our holding that the money is not IRD allows the plaintiffs to set their cost basis as the fair market value of the timber at the times of the deaths of their respective decedents. That decreases their liability for income tax on the money received.

"(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; * * *.

"* * * * *

"(3) Character of income determined by reference to decedent. The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent or any person who acquired such right by reason of the death of the decedent, * * * as if it had been acquired by the estate or such person in the transaction in which the right to receive the income was originally derived and the amount includible in gross income under paragraph (1) * * * shall be considered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount."

The pertinent Treasury Regulation, § 1.691(a)-1(b) provides:

"In general, the term 'income in respect of a decedent' refers to those amounts to which a decedent was entitled as gross income but which were not properly includible in computing his taxable income for the taxable year ending with the date of his death or for a previous taxable year under the method of accounting employed by the decedent. * * *"

Treasury Regulation § 1.691(a)-3(a) also casts some light on the matter:

"The right to receive an amount of income in respect of a decedent shall be treated in the hands of the estate, or by the person entitled to receive such amount by bequest, devise, or inheritance from the decedent or by reason of his death, as if it had been acquired in the transaction by which the decedent * * * acquired such right, and shall be considered as having the same character it would have had if the decedent * * * had lived and received such amount. * * *"

The stipulated facts and the terms of the contract reveal the following:

In April 1955, plaintiffs or their predecessors in interest and others (herein referred to as "owners") entered into the contract, a long-term timber cutting agreement, with Kinzua Corporation, which was engaged in a logging, lumber manufacturing and wood processing business advantageously near the standing timber. The contract covered the timber standing, growing and to be grown upon more than 100,000 acres of timber lands covering an indefinite amount of timber. Kinzua acquired the right to cut during each cutting year a specified maximum amount of merchantable timber and the duty to cut a prescribed minimum amount. The agreement was perpetual in the sense that if Kinzua kept its cutting rights in good standing it could continue to cut timber so long as there remained merchantable timber. The purchase price was to be paid as timber was cut and was based on the current fair market price for the quality, type and volume of timber cut, as determined by a named independent timber engineer pursuant to his appraisal as of May 1 of each logging season.

Kinzua was obligated to present to the owners yearly cutting plans, and the owners had the right to disapprove such plans if "such logging plan would materially affect the value of the remaining timber." Kinzua's cutting obligation was subject to excuse in the event of fire or other casualty which would make logging practically impossible or render its mill facility incapable of utilizing the timber to be logged.

One owner died in August 1964, and another owner died in August 1973. The plaintiffs acquired their respective interests in the timber covered by the contract as a result of those deaths, either by inheritance from a decedent or as a retained interest as a surviving spouse's share of community property.[2] For the tax years involved herein, the plaintiffs reported the gain realized under the timber cutting agreement, using depletion rates which reflected the basis of the timber stepped up to the date-of-death values of

---

[2] Community property is involved because of decedents' State of Washington domiciles prior to their deaths.

the timber pursuant to IRC § 1014(a).[3] The Department of Revenue denied the stepped-up basis for the reason that the amounts constitute IRD pursuant to IRC § 691. Plaintiffs appealed the proposed adjustment amounts and the Tax Court affirmed the Department of Revenue's order.

 Lacking a statutory definition of "income in respect of decedent," the law has developed case by case, resulting in few generalizations but many examples of what is and what is not included in the term.[4] The application of IRC § 691 to certain kinds of income is well established. Income attributable to the decedent's personal services, such as wages, deferred compensation contracts and bonuses, is IRD, even though the decedent may not have a right to receive the payment before death. *Helvering v. Enright*, 312 US 636, 61 S Ct 777, 85 LEd 1093 (1941) (partnership profits); *Latendresse v. Commissioner of Internal Revenue*, 243 F2d 577 (7th Cir 1957) (commissions); Reg. § 1.691(a)-2(b) Ex 1 (deferred salary payments); *O'Daniel's Estate v. Commissioner of Internal Revenue*, 173 F2d 966 (2d Cir 1949) (bonus). Where income is attributable to rents, royalties or interest, only that portion of the

---

[3] The Tax Court explained IRC (1954) § 1014 as follows:

"IRC (1954) § 1014(a) provides, in relevant part, as to the issue posed in the case at bar:

" 'Except as otherwise provided in this section; the basis of property in the hands of a person acquiring the property from a decedent * * * shall * * * be the fair market value of the property * * * at the applicable valuation date * * *.'

"IRC (1954) § 1014(b)(6) provides the same basis adjustment for a surviving spouse's community property interest in the property owned by the decedent at the date of death. The defendant contends that the plaintiffs' timber interests do not qualify for the foregoing basis adjustment because of the exception of IRC (1954) § 1014(c) which provides:

" 'This section shall not apply to property which constitutes a right to receive an item of income in respect of a decedent under section 691.'

"The exception of IRC (1954) § 1014(c) directly raises the inquiry as to whether plaintiffs' interest in the timber constitutes a right to receive income in respect of a decedent under IRC (1954) § 691."

9 OTR 45, 52-53 (1981).

[4] The legislative history is enlightening as to the purpose of IRC § 691 but is little help in applying the provision to specific facts. The legislative history is set out in the Tax Court opinion, 9 OTR 45, 54-56 (1981).

income attributable to the period of time prior to the decedent's date of death, his holding period, constitutes IRD. *Levin v. United States,* 373 F2d 434 (1st Cir 1967); *National Bank of Commerce et al v. Mathis,* 61-2 USTC (CCH), Par. 9744 (E.D. Ark 1961) (rent); *Grill v. United States,* 303 F2d 922 (Ct. Cl. 1962) (royalties); Herbert Payson, 18 T.C.M. 686 (1959) (interest). Where the decedent disposes of property but dies before realizing the proceeds, the proceeds are IRD. *Claiborne v. United States,* 648 F2d 448 (6th Cir 1981). The application of IRC § 691 to proceeds from a sale which is negotiated but not completed before death is less certain. The most recent case on incomplete sales transactions examined the case law and distilled a four-part test for determining whether the proceeds from the sale are IRD:

> "(1) Whether the decedent entered into a legally significant arrangement regarding the subject matter of the sale, (2) whether the decedent performed the substantive (non-ministerial) acts required as preconditions to the sale, (3) whether there existed at the time of the decedent's death any economically material contingencies which might have disrupted the sale, and (4) whether the decedent would have eventually received the sale proceeds if he or she had lived." (Footnotes omitted)

*Estate of Peterson v. Commissioner,* 82-1 USTC (CCH) Par. 9110 (8th Cir 1982), citing 74 TC 630 at 639-641.

■ The focal point of all of the cases determining whether an item of income is IRD is the activity or event which produced the income, in this case, the timber cutting agreement. Defendant contends that the contract, while not effectuating a completed sale at the time it was entered into, gives rise to the doctrine of equitable conversion, leaving the decedents with an interest in personal property, the proceeds from the timber sales. Whether the timber cutting agreement sufficiently converted the decedents' interest in the timber into a right to income before death must be resolved under federal law. *Commissioner of Internal Revenue v. Linde,* 213 F2d 1 (9th Cir 1954); *Burnet v. Harmel,* 287 US 103, 53 S Ct 74, 77 LEd 199 (1932). Equitable conversion and contract or property labels are not necessarily dispositive of a federal taxation issue.

Although the application of IRC § 691 to timber cutting agreements has yet to be considered, numerous decisions have discussed the nature of the transaction for income taxation purposes. Under IRC § 631, the agreement is considered to effectuate a sale on the date the timber is cut. Internal Revenue Code § 631 (b) provides:

"In the case of the disposal of timber held for more than 6 months before such disposal, by the owner thereof under any form or type of contract by virtue of which such owner retains an economic interest in such timber, the difference between the amount realized from the disposal of such timber and the adjusted depletion basis thereof, shall be considered as though it were a gain or loss, as the case may be, on the sale of such timber. * * * The date of disposal of such timber shall be deemed to be the date such timber is cut, * * *."

The most common instance of a disposal of timber with an economic interest retained is where the timber is sold on the stump by the thousand board feet, being measured after cut, and the owner is paid an amount on a per unit cut basis. 3B Mertens, Law of Federal Income Taxation § 22.128 (1980). This describes the timber cutting agreement in this case. Under general tax law, then, the timber cutting agreement is considered to effectuate yearly sales on the date of severance, and the proceeds in question are from sales that were incomplete at decedent's death.

The parties have urged that the starting point for analyzing the application of the concept of IRD to proceeds from a sale which the decedent negotiated but which was incomplete at death is *Commissioner of Internal Revenue v. Linde, supra,* adopted in Treas. Reg. § 1.691(a)-2(b) Ex 5(2). Defendant contends that the decision in *Linde* is dispositive of this case; plaintiffs contend that had the court in *Linde* been confronted with the facts in this case, the exact opposite result would have obtained. In that case, the decedent entered into an agreement where, prior to his death, he had delivered his grape crop to a marketing cooperative where it was commingled with crops of other farmers, converted into wine and ultimately sold. At death, the decedent held rights to share in the future proceeds from the wine pooling arrangement. The payments for wine sales made by the cooperative after death were taxable as IRD because they were

"* * * realized under and in consequence of contracts and deals made by the decedent in his lifetime. No act or thing taken or performed by the [distributee] operated to procure or to give rise to this payment. Such payments had their source exclusively in the decedent's contract and arrangement with the cooperative associations." *Id* at 4.

The pivotal factor in *Linde* was that the decedent, by delivering the grapes to the cooperative, had reduced his interest in the property to an intangible right to income from sale of the pool of wine created from the grapes acquired by the cooperative. The test, however, does not center upon delivery but on whether the decedent performed all the substantial acts necessary to dispose of the property such that the decedent's transferee or beneficiary had only a passive role to play in completing the sale. *Estate of Peterson v. Commissioner, supra.*

The decedents' interest under the timber cutting agreement is distinguishable from the decedent's interest in his grapes in *Commissioner of Internal Revenue v. Linde, supra.* In *Linde* the decedent had delivered his property to the cooperative and the property was commingled with other grapes and converted into wine. The decedent's property was no longer in his possession or control; the grapes, in fact, no longer existed. Obviously, the decedent had no grapes at the time of death which his transferees could acquire; the decedent had only a right to income. Each decedent in the case at bar retained possession and control of the timber until it was severed. Two indicia of ownership are that the buyer's yearly cutting plan was subject to the owners' approval, and the risk of loss was on the owners. The mere fact that the income from the timber derives from a contract executed by the decedents is not sufficient to include the income as IRD.

"Although it is pertinent to inquire whether the income received after death was attributable to activities and economic efforts of the decedent in his lifetime, these activities and efforts must give rise to a right to that income. And the right is to be distinguished from the activity which creates the right. Absent such a right, no matter how great the activities or efforts, there would be no taxable income under § 691."

*Trust Company of Georgia v. Ross,* 392 F2d 694, 695 (5th Cir 1967).

If we apply the four-part test of *Estate of Peterson v. Commissioner, supra,* we find that although the first and fourth parts are met, parts two and three are definitely not. Each owner-decedent retained an interest in the standing timber at death. While each plaintiff's decedent lived, Kinzua's yearly cutting plan was subject to his and her approval. Review of this plan with a view toward conservation of the entire timberlands is a "substantive (nonministerial)" act which was a prerequisite to the yearly sale of timber. Also, if the designated independent timber appraiser could not, or would not, serve, each of the owners had a say in determining a successor. This was not a matter to be taken lightly, for the contract made the results of each May 1 appraisal binding on all parties. There were, also, "economically, material contingencies" existing at the time of each decedent's death that could have disrupted the sale, such as fire, discussed above.

We find that in these circumstances this was not income in respect of a decedent, and these taxpayers are entitled to the stepped-up basis for which they contend.

Reversed and remanded to the Tax Court for entry of a decree consistent with this opinion.